## BICKFORD et al. v. McCOMB.

(Circuit Court, W. D. Tennessee, W. D.   May 20, 1898.)

No. 421.

1. LIABILITY OF STOCKHOLDER—BILL TO SUBJECT ASSETS—PARTIES.

Mill. & V. Code Tenn. § 4168, allowing any creditor or stockholder, whether he has recovered a judgment or not, to file a bill to subject assets to the payment of his debt, is not applicable to a suit to which the corporation is not a party, and in which a judgment creditor seeks to subject assets in the hands of a creditor or stockholder; and in such case the bill must show execution and nulla bona return.

2. INSOLVENT CORPORATION—BILL FOR CONTRIBUTION—NULLA BONA RETURN.

Where a judgment creditor of an insolvent corporation, who was not a party to the insolvency proceedings, files a bill for contribution against a distributee who has received more than his equitable share of the assets, he need not make the corporation or other creditors parties, nor allege execution and nulla bona return.

3. EQUITY—SUIT FOR CONTRIBUTION AGAINST DISTRIBUTEES OF INSOLVENT—LACHES.

Where insolvency proceedings against a corporation were pending for nearly ten years, a resident creditor, engaged for over four years of the time in litigation with the corporation over a claim growing out of his relation as its landlord, who does not become a party to the insolvency proceedings, and file his claim therein, is guilty of both willful neglect and want of diligence, and cannot maintain a suit against distributees for contribution.

This is a suit in equity by W. A. Bickford and H. R. Sherrod against J. J. McComb to subject to the payment of their judgments against the Southern Oil Works assets of such corporation received by him on final distribution in insolvency proceedings. It was submitted on the pleadings, certain record evidence, and an agreed statement of facts.

Prior to the transactions hereinafter mentioned, the Southern Oil Works was a Tennessee corporation, doing business at Memphis. On the 27th of May, 1875, the state, upon the relation of Kortrecht and other stockholders, filed a bill in equity to dissolve the corporation, wind up its affairs, sell its assets, and pay its debts, as provided in the statutes of Tennessee in such cases. Mill. & V. Code, §§ 4146–4168 (Thomp. & S. Code, §§ 3409–3431). J. J. McComb, the principal stockholder, was also a very large creditor, both as a lienholder and as a general creditor. He filed a cross bill for the enforcement of his lien and the collection of his debt, not only by the sale of its properties, but also by an assessment for the unpaid stock of the stockholders. After about 10 years of voluminous and formidable litigation, there was a final decree disposing of the assets by sale, assessing the stockholders upon the unpaid stock, and a distribution of the proceeds among the creditors, according to the terms of that decree. The date of this decree was January 7, 1885. McComb was declared a creditor for $126,190.30, and he was assessed, as unpaid on his shares of stock, $36,375, which was credited upon his debt. From the assessments on other stockholders and other assets there also was realized by him in the distribution a further sum of $25,172.42, which was also credited upon his debt against the company; making a total credit of $61,547.42 which he received out of the assets, leaving a balance due to him of $64,642.88. Pending that suit, and about a year after it was begun, W. A. Bickford and H. B. Sherrod, the plaintiffs in this case, leased to the Southern Oil Works certain storehouses in the city of Memphis, to be used as a warehouse for the storage of its products. On the 28th of November, 1876, this building collapsed, and was totally destroyed. On the 18th of January, 1881, Bickford and Sherrod respectively began suits against the Southern Oil Works claim-

ing that the damage was caused by overloading the floors of the building contrary to the terms of the lease, and on the 5th of May, 1885, in the supreme court of Tennessee, each recovered a judgment for the sum of $4,080. Counsel say in their briefs that an execution issued upon these judgments, and was returned nulla bona. It is not so stated in the bill filed in this case, does not appear so by the transcript of the record of the suit filed as proof in the case, does not appear so in the agreed statement of facts filed by counsel, and I have had the records searched which were agreed to be used in evidence, by the clerk, who does not find any such execution or return; if in fact they ever existed. But on the 1st of January, 1887, they filed this bill in the chancery court of the state, from which it was removed to this court, against J. J. McComb alone, except that they made the Memphis & Charleston Railroad, in which he was a stockholder, a party, for the purpose of securing service upon him in this suit by attachment, which became unnecessary, as he subsequently appeared and answered. The company was named a defendant, but there was never any service of process to bring it in as a party.

The bill states substantially the foregoing facts. Alleges that the judgments have never been paid; that McComb had appropriated all the assets to the payment of his own debt against the company, of which he was the principal, if not the only, creditor, and the largest stockholder; alleges that Bickford and Sherrod had no notice of the pendency of that suit at the time they made the leases or at any subsequent time, and no knowledge whatever of its character and object; that the company contested the claim for damages, taking the case to the supreme court of the state, where the judgments obtained were finally affirmed. It sets up that the company was at the time of the filing of this bill insolvent, and that at the time of the filing of the Kortrecht bill it was insolvent, and wholly unable to pay its debts; that, being so insolvent, its assets have passed into the hands of McComb as a trust fund for the payment of its debts, and particularly for the payment of these judgments; and then prays that all the money and property heretofore owned by the Southern Oil Works, and heretofore delivered and paid to the defendant McComb, as well as the unpaid capital stock of McComb in the Southern Oil Works, be declared a trust fund for the payment of the debts of the Southern Oil Works, and that the same may be administered in this court according to the practice of courts of equity. It prays for an account, for a decree upon final hearing, for the amount due upon the judgments, and that the payment thereof by the said McComb be decreed, or a just and equitable proportion thereof, according to the amounts found to be due, and for general relief. The answer of McComb sets up and pleads the Kortrecht suit and decrees as a bar to the relief prayed for in the bill, and also relies upon the facts in that suit; that McComb is a creditor with preferred liens, and, after having advanced very large sums of money, has still a large amount due him, as appears by the record in that suit. It avers that, if the plaintiffs were not formal parties to that suit, they were, by operation of law, substantial parties to it as creditors of an insolvent corporation bound to take notice of its winding up; that if, in fact, they had no notice of the pendency of that proceeding, they were nevertheless chargeable with notice of the pendency of the suit, and that their contract of lease was actually made after the suit was commenced, and under circumstances requiring them to take notice of its condition, and the fact that it was being wound up as an insolvent corporation; that they were residents of the city of Memphis at the time of the bringing of this suit, at the time of the making of their lease and of obtaining their judgments, of the filing of this bill, and continuously during the whole progress of the proceedings in that suit; and that they were as effectively and completely bound by the said decrees as if they had been formal parties thereto. The respondent also states that he has already had assessed against him the unpaid, outstanding amounts due on his shares of stock, and that he is not liable for any further or other assessments in this suit. He then sets up his indebtedness against the company, and reiterates his claim against it, and denies any responsibility to the plaintiffs by reason of the facts for the judgments they have obtained against the company.

To save the expense of taking the testimony and producing the records, the parties have filed a stipulation, by which it is agreed as follows:

"In the above cause, with the view of saving the trouble and expense of taking testimony, and in order to fix the facts upon which the case is to be tried, it is agreed as follows: (1) That the charter of the Southern Oil Works is contained in chapter 105, pp. 592–594, of the Acts of the General Assembly of the state of Tennessee of 1869–70 (Private), to which reference is hereby made, and such charter may be used in evidence for all the purposes of this suit. (2) It is further agreed that the suit mentioned in the bill and also in the answer of J. J. McComb, on file herein, was brought in the First chancery court of Shelby county, Tenn., on the 27th day of March, 1875, and that the bill was filed under sections 4146–4168 (3409–3431) of the Code of Tennessee, and more particularly under the last-named section; that is, 4168 (3431). (3) It is further agreed that all the statements of fact contained in the said answer of the said J. J. McComb are to be taken as true for all the purposes of this suit, except where the same are contradicted by the statements contained in this agreement, and in such cases this agreement is to be taken as true. (4) It is further agreed that the copy of the decree of the chancery court of Shelby county, Tennessee, attached to and made an exhibit to the said answer of the said J. J. McComb, is a true copy of the decree pronounced by the said chancery court in the suit mentioned in the second paragraph of this agreement, and that the said decree has never been reversed, vacated, or set aside. (5) It is further agreed that the original records in the two suits of W. A. Bickford v. The Southern Oil Works et als. and H. R. Sherrod v. The Southern Oil Works et als., mentioned in the bill in this cause, or certified copies of such records, including the records in the circuit court, and the records in the supreme court, and a certified copy of final judgment in said court, may be considered as evidence in this cause for all proper purposes. (6) It is further agreed that both W. A. Bickford and H. R. Sherrod resided in Shelby county from the beginning of the suit mentioned in the second paragraph of this agreement until the end of it, but neither one of them was made a party plaintiff or defendant in the suit, and neither one of them was served with process therein, or appeared therein, or asked to be made a party thereto.

"January 24, 1893."

J. M. Gregory and Gantt & Patterson, for complainants.
Wm. M. Randolph & Sons, for defendants.

HAMMOND, J. (after stating the facts). Because of its vagueness and too general averments it is difficult to determine the technical character and purpose of this bill. Seemingly, it is a bill to administer the assets of the corporation in insolvency, and yet it makes only one of the stockholders a party, and does not make the company itself a party, but selects one of the stockholders who had, through legal proceedings for that purpose, been paid out of the assets of the company a part of the debt due him as a creditor, and who, by the same legal proceedings, has paid all that was due from him as a stockholder, and asks to charge him as a trustee of the assets for the payment of its debts. It does not seek to bring in other creditors to share in those assets, but confines its operation to the simple purpose of having that stockholder and creditor pay the judgments of the plaintiffs. In effect, it is a bill to charge McComb with the payment of those debts as if he were himself the judgment debtor, upon the theory that he has come into the possession of assets of the company which would have been liable to execution in satisfaction of these judgments if the assets had remained in the hands of the company, treating the legal proceedings by which McComb was paid his own debt against the company as having had no effect whatever in establishing any right to the possession of that

which he has received. This is a very broad, if not loose, view of the doctrine that the assets of a corporation are a trust fund for the payment of its debts, wherever the assets may be found. There can be no doubt about the doctrine in its general statement nor in its particular application, as suggested here, that a creditor cannot selfishly appropriate the assets to the payment of his own debt, ignoring all other creditors; but, thus broadly stated, the principle is confined to an appropriation by the creditor, which the courts will not sustain as a lawful application of the assets, to the payment of his debt. It does not follow from the general doctrine that when a creditor has by a judgment and an execution levied upon the assets, or by any other legal proceeding adequate for the purpose, procured a judicial judgment and decree that the assets are liable to the payment of his claim, and by like judicial judgment and decree appropriates particular assets to that purpose, that he can be in that condition always, and under all circumstances, charged as a trustee for other creditors who have not been paid. It depends, of course, upon the validity of the proceedings and their legal effect. Even if a creditor, by his vigilance and diligence, has succeeded in collecting out of the insolvent corporation more than other creditors have received, it is not, as a matter of course, to charge him as a trustee for the benefit of other creditors. The outstanding creditors must have some equity as against him arising out of the wrongfulness of his advantage in the premises.

Treating the bill as one to charge a stockholder or a creditor with liability for the debts of the corporation because of his possession of the assets, it may be very doubtful whether such a bill can be maintained, at least in the federal courts, unless there has been an exhaustion of remedies against the corporation itself, at least to the extent of an execution and nulla bona return, and this, even though the corporation be insolvent. Taylor v. Bowker, 111 U. S. 110, 4 Sup. Ct. 397; Jones v. Green, 1 Wall. 330. But, assuming that this equitable remedy has been enlarged by the Tennessee statute (Mill. & V. Code, § 4168), which allows any creditor or any stockholder, whether he has recovered a judgment or not, to file a bill to subject the assets to the payment of his debt, this bill cannot be treated as a suit of that kind, for the reason that the corporation is not made a party, and therefore the bill does not come within the provisions of that statute. It is a bill against McComb only, and the case must be determined with sole reference to the rights of these creditors against him seeking to charge him as trustee, and it would seem to fall directly within the above-cited cases requiring a judgment and nulla bona return. For want of an averment in the bill that there has been an execution issued, and nulla bona return, and for want of proof of that fact, it might be sufficient to dismiss this bill upon the apparent theory of its draftsman as a bill to enforce a trust against the assets of a corporation. But under the general allegations of the bill, and its prayer for general relief, there is another view of the rights of the plaintiffs to maintain it which was suggested and argued. Reasonably, it may be treated as a bill for contribution against a distributee of an insolvent corporation to

compel him to refund, for the benefit of any creditor who has not received his share of the insolvent assets, whatsoever part may belong to him as a surplus over and above that which he, the said distributee, ought to have received upon an equitable distribution of the assets. The principle is stated in the case of Williams v. Gibbes, 17 How. 239, 255, as "* * * well settled, in respect of proceedings in chancery for the distribution of a common fund among the several parties interested, that an absent party who had no notice of the proceedings, and was not guilty of willful laches or unreasonable neglect, will not be precluded by the decree of distribution from the assertion of his right by bill or petition against the trustee, executor, or administrator; or, in case they have distributed the fund in pursuance of an order of court, against the distributees." Quoting from the case of David v. Frowd, 1 Mylne & K. 200, the court, first relating the practice of giving notice by advertisement for creditors and others interested in the distribution of the fund to appear and file their claims, remarks upon the fact that such advertisements may and must in many cases not reach the parties really entitled, because they are abroad, or from a multitude of circumstances, and then observes as follows:

"If a creditor does not happen to discover the proceedings in court until after distribution has been actually made, by order of the court, amongst the parties having, by the master's report, an apparent title, although the court will protect the administrator who has acted under the orders of the court, yet, upon a bill filed by that creditor against the parties to whom the property has been distributed, the court will, upon proof of no willful default on the part of such creditor, and no want of diligence on his part, compel the parties defendant to restore to the creditor that which of right belongs to him."

Again, referring to the case of Gillespie v. Alexander, 3 Russ. 130, with approval, the court further says that:

"If the creditor does not come in until after the executor has paid away the residue, he is not without remedy, though he is barred the benefit of that decree,—that is, the decree of distribution. If he has a mind to sue the legatees, and bring back the fund, he may do so; but he cannot affect the legatees except by suit, and he cannot affect the executor at all."

I cannot find that any of the cases on this subject require that the creditor shall have a judgment and nulla bona return. He stands in the suit against the overpaid distributee precisely as if he were appearing in the original suit where the assets were distributed to prove his claim. It seems to me that the bill, in this aspect of it, is not subject to objection for want of parties, or for the want of judgment and nulla bona return; and the only question in the case is whether or not the absent party who has failed to receive his part of the assets has been "guilty of willful laches or unreasonable neglect," or has made "proof of no willful default, and no want of reasonable diligence on his part."

It is agreed between the parties that the plaintiffs in this case were neither parties plaintiffs nor defendants in the suit of the state ex rel. Kortrecht against the Southern Oil Works; that neither of them was ever served or appeared therein, or asked to be made a party thereto; and it is further agreed that they both resided in Shelby county from the beginning of that suit until the end of it.

It otherwise appears from the records in evidence that the suit was actually pending at the time their lease commenced, and had been for more than a year. After the collapse of the warehouse, which took place more than a year and a half from the beginning of the lease, they brought a suit for damages, which was dismissed without a trial on the merits. For what reason, does not appear. A second suit was brought on the 12th of January, 1881, more than four years after the disaster, and nearly five years after the Kortrecht suit was commenced, and while it was still pending, and about five years before the final decree in that suit, being about six years before the filing of the bill in this case. It is stated in briefs of counsel for the plaintiffs that McComb was the only creditor appearing in the suit, that there was never any advertisement for other creditors to appear and file their claims, but this fact is not covered by the agreement of counsel, and the court here does not know how the fact may be. Occupying the relation of landlords to the Southern Oil Works it would seem almost incredible that these plaintiffs should allow 11 years to elapse without any knowledge of the circumstance of that suit, or without any information as to the existing conditions that would have put them upon inquiry as to the affairs of the corporation. They lived in the same city, and were for nine years of that period engaged in litigation with the company to establish their claims for damages. Indeed, they waited nearly two years after they obtained the judgments before they filed this bill, and all this time, both before and after judgment, they allege that they were in ignorance of the existence of the Kortrecht suit.

It is to be observed that the cases establishing the right of the outlying creditor to sue the distributees for contribution not only require that he shall be without willful default, but that he shall establish by proof that there was no want of reasonable diligence on his part in ascertaining the true condition of affairs. In the case of Board of Public Works v. Columbia College, 17 Wall. 521, 530, it is held that the rule requiring the existence of special circumstances bringing the case under some recognized head of equity jurisdiction should not only be insisted upon with rigor whenever the property sought to be reached constitutes, as here, assets of a deceased debtor which have already been subjected to administration and distribution, but some satisfactory excuse should be given for the failure of the creditor to present his claim in the mode prescribed by law before the distribution. It is true that these creditors were suing at law to establish their claim for damages; that the Southern Oil Works was resisting the claim step by step; that the company carried the case by appeal to the supreme court, and submitted to judgment only in the court of last resort; and it is true that that litigation was for some reason protracted during a period of more than nine years counting from the beginning of the second suit to the final judgment in the supreme court. But all these facts do not answer the rule of diligence, because they have no relation to the duty of the plaintiffs, whether they procured judgment or not upon their claims, to take the necessary steps to present them in the court of insolvency, where the assets were being administered. They could

not act as if the pendency of their suits were a lien on the assets, as if by judgment or attachment on the bill. All they had to do in order to share in the assets of the Southern Oil Works in the Kortrecht suit was to appeal, and file their petition stating the pendency of their suits at law, their expectation of judgment, and asking the court of insolvency to retain a sufficient amount of the assets to answer that judgment, or to then and there itself adjudicate the amount due, and pay the plaintiffs their pro rata according to the allegations of the petitions and the order of the court. Ignorance in fact of the pendency of the proceedings is not an answer to the rule of diligence, because, if it were, there would be no limitation upon the rule that an absent creditor, who is as ignorant, might come in under any circumstances, and ask for a contribution and restoration of a sufficient amount to pay his claims. But we have seen that this is not the rule. The question is, has there been any willful neglect on the part of these plaintiffs to appear in the Kortrecht suit, and take the necessary steps to protect their interests and receive their share, or has there been diligence on their part to inform themselves of the facts in that behalf? It seems to me too plain for any argument that on the facts stated there has been both a willful neglect and a want of diligence. Common prudential considerations on the part of one bearing the relation that these plaintiffs bore to the Southern Oil Works in respect of their claims, both as landlords and claimants, for damages, would require that inquiry should be made as to the condition of the company and its affairs. Common repute about the courts and about the town would have been sufficient to have put the plaintiffs, who were renting to the Southern Oil Works, and claiming damages against them, upon inquiry as to whether or not it was a solvent or insolvent corporation, and whether it was being administered in insolvency or not; and the mere lapse of time during the pendency of those proceedings is almost conclusive of a want of diligence and willful neglect where the parties did not reside abroad, and there are no special circumstances to account for the alleged ignorance of the facts. Nothing is shown in the proof in this case to excuse this ignorance. Nothing is set up in the proof to explain it. It is relied upon as a bare fact, without explanation or excuse, as a ground of equity to support this bill. It would break down all the safeguards of legal proceedings to allow them to be disturbed under such circumstances.

This view of the case makes it unnecessary to consider many of the other questions that have been argued in the case, especially those in relation to the right of a creditor to pursue the assets of an insolvent corporation for the payment of its debt by proper proceedings for that purpose. I do not think this is that kind of a bill, but, if it can be held to be so, it must fail for want of proper parties. I doubt very much if that principle would authorize a creditor to file what is substantially a second bill to administer the affairs of an insolvent corporation for the payment of its debts and the distribution of its assets; and, if the bill can be supported at all, it can only be upon the ground mentioned in the case of Williams v. Gibbes, supra, of the right of a creditor to sue the distributees inde-

pendently, and upon distinctive and wholly different **grounds of equity** than those involved in a bill to administer the assets of an insolvent corporation.

The bill will be dismissed at the plaintiffs' costs. Ordered accordingly.