BOARD OF PUBLIC WORKS *v.* COLUMBIA COLLEGE ET AL.

1. A personal judgment, rendered in one State against several parties jointly, upon service of process on some of them, or their voluntary appearance, and upon publication against the others, is not evidence outside of the State where rendered of any personal liability to the plaintiff of the parties proceeded against by publication.
2. The clause of the Federal Constitution which requires full faith and credit to be given in each State to the records and judicial proceedings of every other State, applies to the records and proceedings of courts only so far as they have jurisdiction. Wherever they want jurisdiction the records are not entitled to credit.
3. No greater effect can be given to any judgment of a court of one State in another State than is given to it in the State where rendered. So held in a case where a party, relying upon a decree of an inferior State court, objected to the character given to the decree as interlocutory by the highest appellate court of that State, and insisted that it should be treated as a final decree.
4. A court of equity will not exercise its jurisdiction to reach the property of a debtor applicable to the payment of his debts, unless the debt be clear and undisputed, and there exist some special circumstances requiring the interposition of the court to obtain possession of, and apply the property.
5. This rule should be insisted upon with rigor whenever the property sought to be reached constitutes assets of a deceased debtor, which have already been subjected to administration and distribution; and some satisfactory excuse should be given for the failure of the creditor to present his claim, in the mode prescribed by law, to the representative of the estate, before distribution.

APPEAL from the Supreme Court of the District of Columbia.

This was a suit in equity to reach property belonging to the estate of a deceased debtor, and have it applied to the demand of creditors, and particularly funds distributed by the executor of the estate of the deceased to legatees.

The facts of the case were as follows:

In July, 1853, the firm of Selden, Withers & Co., which was engaged in the business of banking in the city of Washington, entered into a contract with the Board of Public Works of Virginia, to sell on its account certain bonds of

the State of Virginia, which had been issued for public improvements. In pursuance of this contract, the firm received from the complainant at different times bonds of the State amounting to over $4,000,000. In November, 1854, the firm suspended payment, being in insolvent circumstances, and made an assignment of its partnership assets to trustees for the benefit of its creditors. It was at the time indebted in a large amount to the complainant for the proceeds of bonds sold and not accounted for. The firm consisted of five partners, named Selden, Withers, Latham, Bayne, and Whiting; the two former having been of Alexandria, Virginia, the others mostly of Washington.

In December following, the said board instituted an action in the Supreme Court of the State of New York, against the members of the firm, to compel them to account for bonds deposited with them, and to pay the proceeds received from their sale. In this action personal service of process was made upon two of the partners, Latham and Bayne. Whiting, another partner, voluntarily appeared by attorney. The other two partners, Selden and Withers, were not personally served, and did not appear in the action. Being non-residents of the State, only a constructive service by publication was made upon them. The answer of Bayne, which was filed in 1856, alleged various set-offs, and (referring to the general assignment of the partnership in 1854, and to that of Withers in 1855) set up for a further and separate defence, that since the filing of the bill there had been assigned to the said Board of Public Works, or to persons for it, bonds, real estate, and other property (which it alleged that the said board had accepted and received), to an amount sufficient to extinguish and satisfy the balance. The action proceeded on the pleadings to judgment, which was rendered in March, 1857, against all the partners for upwards of $500,000, including the allowance to the attorneys and costs.

In January, 1855, the defendant Withers, professing a desire, so far as he was able, to furnish sufficient security out of his private means for any balance of the debt of the firm

that might remain unsatisfied from the partnership assets, conveyed to Bocock, the Attorney-General of Virginia, and one Wylie, a resident of that State, in trust for that purpose, certain real property situated in Alexandria, Virginia, and in St. Louis, Missouri, and certain shares in the Cumberland Coal Company. The nominal value of the property thus conveyed exceeded $250,000.

In September, 1858, the said board instituted a suit in equity in the Circuit Court of Alexandria County, in Virginia, against the members of the firm, their assignees, and the trustees, Bocock and Wylie, to obtain a decree against all the partners for the amount due from them, and for the sale of the property conveyed by Withers to Bocock and Wylie, and the application of the proceeds to the payment of the debt. In this suit two of the partners, Selden and Withers, were personally served with process; the other partners being non-residents of Virginia, were proceeded against by publication. Withers filed an answer, setting up, among other things, the recovery by the complainant of the judgment in the New York Supreme Court against his copartners upon the same causes of action, insisting that those causes were merged in that judgment; and also that the partnership assets in the hands of the assignees exceeded in amount the indebtedness of the firm, and that his individual property conveyed to the trustees, Bocock and Wylie, could not be subjected to sale until the trusts of the deed to the assignees were fully executed. This defence does not appear to have made much impression upon the Circuit Court, for on the same day on which the answer was filed, it rendered its decree that the complainants recover against all the partners, as well against those brought in by publication as those personally served, the sum of $513,615; this sum having been ascertained and reported as due from them by a commissioner previously appointed in the case. The decree, which was made June 1st, 1860, was accompanied by a direction that unless the amount was paid before the 1st of December following, the property conveyed by Withers to the trustees, Bocock and Wylie, should be sold and the

proceeds applied thereon; and commissioners were designated to make such sale.

From this decree Withers filed a petition to the Supreme Court for au appeal. But the appeal was denied, "the court being of opinion that the decree being interlocutory, no execution can issue without the order of court; and deeming it most proper that the case should be proceeded in further 'in the court below before an appeal is allowed."

In the year 1860, Withers removed his residence from Alexaudria, in Virginia, to the District of Columbia, and in November, 1861, died there, leaving a will, which was insufficient to pass real property, but was sufficient to pass persoual estate. The will was admitted to probate in the Orphans' Court of the district, and letters testamentary were issued thereon to English, the only one of the executors named in the will who qualified.

Under this will there were several legatees, among whom were the President of Columbia College (in trust for the college), Elizabeth Madden and Attie Gulick.

In 1865 the legatees filed a bill in the Supreme Court of the District to compel the executor to account for and distribute the personal estate in his hands. The executor appeared and answered, and the cause was referred to an auditor to take an account of the personal property of the testator, and of the debts against the estate, and of the balance distributable to the legatees and next of kin. The auditor having by advertisement called on persons having claims against the estate to present them to him, made a report accordingly, reporting distribution among the legatees and next of kin. The report was confirmed, and in April, 1866, the Board of Public Works of Virginia not having in any way appeared or made any claim before the auditor, or in the Orphans' Court of the District of Columbia (a tribunal having jurisdiction over the estates of decedents in the District), a decree was entered directing distribution, which was accordingly made.

The will, as already stated, was insufficient to pass real property, and an interest in such property situated in the

District,. belonging to the deceased, vested, accordingly, in his heirs.

In 1856 the deceased had conveyed a parcel of land, situated in the District, to Columbia College for the nominal consideration of $18,000.

In this state of things the Board of Public Works of Virginia filed, in July, 1867, the present bill against the executor of Withers, his heirs at law, and legatees, among whom were Columbia College, Madden, and Gulick, to reach the real property of the deceased which did not pass under the will, but which vested in his heirs; to set aside the deed to the college, on the alleged ground that it was made without consideration, whilst the deceased was insolvent, with intent to defraud the complainant; to charge the executor for the assets which came into his hands, and which he distributed to the legatees under the decree of the Supreme Court of the District, on the ground that he was informed of the debt to the complainant, and failed to bring it to the notice of the court directing the distribution, and to compel the legatees to refund the amounts received by them.

Columbia College, Madden, and Gulick (these last two with their husbands) alone answered the bill.   In their answers they negatived its material allegations and relied upon the non-joinder of the surviving partners of Withers, and the statute of limitations.   They also contended that the demand against Withers was merged in, and extinguished by, the judgment of the Supreme Court of New York; that the decree of the court of Virginia was interlocutory and not final, and that the distribution under the decree of the Supreme Court of the District afforded a complete protection to the executor and legatees.

A replication was filed to the answers, and the case was heard upon the pleadings without any proofs.   The court dismissed the bill without prejudice, and the complainant appealed.

The defendants, in their answer, disclaimed any knowledge or information touching the alleged interest of the

deceased in real property in the District which did not pass under his will, and, by consent of parties, a decree was entered for its sale. The answer of Columbia College showed that the deed to that institution, executed by the deceased in 1856, was made in part payment of a bond given as far back as 1852, and which became payable in July, 1853, before the suspension of Selden, Withers & Co., and before that firm was in failing circumstances; and the attempt to reach the property appeared to have been abandoned by the complainant. On the argument no decree was asked respecting it, nor was any allusion made to it. And from the failure to press the charge made against the executor personally, and to present any evidence of neglect of duty on his part, that ground of relief would also appear to have been abandoned. In his printed argument in this court the counsel of the complainant stated, that the only question really controverted and decided in the court below was the liability of the above legatees to refund the amounts received by them to be applied on the demand of the complainant. And that question was the only one for determination on this appeal.

*Mr. W. S. Cox, for the appellant,* argued that the case brought in 1854 in the Supreme Court of New York was, of course, founded on the existence of a debt due by Selden, Withers & Co. to the Board of Public Works of Virginia; that except on pleadings showing it, no such judgment as was given could have been given; that the decree of the Circuit Court of Alexandria County, Virginia, made in 1860, was equally conclusive; that it terminated in a decree ascertaining a clear balance, and decreeing unconditionally that the board recover of all the partners the sum of $513,615; that such a decree was a final decree according to the Virginia decisions,[*] and must be treated as conclusive in other States.[†]

---

[*] Harvey *v.* Branston, 1 Leigh, 108; Thorntons *v.* Fitzhugh, 4 Id. 209; Dunbar's Executors *v.* Woodcock, 10 Id. 629.

[†] Mills *v.* Duryee, 7 Cranch, 481.

Assuming thus, he argued further that it was a settled doctrine of equity that the creditors of a deceased person had a right to pursue assets in the hands of legatees, and this law was recognized in this court,* as generally elsewhere.

*Mr. W. D. Davidge, contra, for Columbia College,* argued that independent of numerous technical objections, which he specified,—including among them and prominently the statute of limitations, and non-joinder of the surviving partners of Withers,—that neglect of the complainant to give notice to the executor of Withers, or to notify its claim to the auditor when about finally to distribute the fund, alone required the dismissal of the bill below, and the affirmance of the decree which dismissed it.

Mr. Justice FIELD, after stating the facts of the case, delivered the opinion of the court as follows:

As preliminary to the inquiry whether any grounds are disclosed in the case for the interposition of a court of equity, the existence of an undisputed debt by the deceased must appear. The existence of such a debt is affirmed upon the admission of the pleadings of the indebtedness, in 1854 and 1855, of the firm of Selden, Withers & Co., and upon the decree of the Circuit Court of Virginia, in June, 1860.

Whether the indebtedness of that firm was merged in the judgment of the Supreme Court of New York, and the personal claim against Withers was thus extinguished, as contended by counsel, it is unnecessary to determine. It is sufficient for the disposition of this case that the judgment is not evidence of any personal liability of Withers outside of New York. It was rendered in that State without service of process upon him, or his appearance in the action. Personal judgments thus rendered have no operation out of the limits of the State where rendered. Their effects are merely local. Out of the State they are nullities, not bind-

---

* Riddle *v.* Mandeville & Jameson, 5 Cranch, 322.

ing upon the non-resident defendant, nor establishing any claim against him. Such is the settled law of this country, asserted in repeated adjudications of this court and of the State courts.

The judgment in New York, it is true, is a joint judgment against all the partners, against those summoned by publication as well as those who were served with process or appeared, but this joint character cannot affect the question of its validity as respects those not served. The clause of the Federal Constitution which requires full faith and credit to be given in each State to the records and judicial proceedings of every other State, applies to the records and proceedings of courts only so far as they have jurisdiction. Wherever they want jurisdiction the records are not entitled to credit.*

The indebtedness of the firm of Selden, Withers & Co., to the complainant in 1854 is, it is true, admitted by the pleadings, but the admission is accompanied with such statements as to the assignment of the partnership property, and transfer of individual property of Withers for the payment of the indebtedness, and the disposition and use of such property, as to render it a matter of doubt whether, upon an accounting, any amount would remain due to the complainant. The existence of any present indebtedness is denied, and the case was brought to a hearing on the pleadings without any evidence.†

Is the claim of the complainant against Withers established by the decree of the Circuit Court of Virginia so as to authorize the present bill? The suit in this latter court was brought against all the partners, but personal service was made only upon two of them, Withers and Selden, and the case proceeded against the others upon publication of citation. Withers, as already stated, insisted in his answer, among other things, upon the merger of the causes of action in the New York judgment; and that his individual prop-

---

* D'Arcy *v.* Ketchum, 11 Howard, 174; Bates *v.* Delavan, 5 Paige, 305; Story on Conflict of Laws, § 546.

† Young *v.* Grundy, 6 Cranch, 51.

erty conveyed to trustees could not be subjected to sale until the trusts in the deed of assignment were executed; but the Circuit Court, without appearing to attach any weight to this defence, immediately rendered its decree against all the partners.   Withers desired to appeal from this decree, but the Court of Appeals denied his application for that purpose, on the ground that the decree was merely interlocutory and not final, declaring, in its order, that it deemed it " most proper that the case should be proceeded in further " before an appeal was allowed.   One of the principal objects of the suit was to obtain a sale of the property conveyed by him to trustees, and the application of the proceeds to the debt of the firm of Selden, Withers & Co. to the complainant. The amount of individual property thus conveyed exceeded in nominal value, as already stated, $250,000, and this was to be applied only to cover a deficiency remaining after the application to that debt of a portion of the partnership assets assigned in 1854.   The Court of Appeals may have considered that the decree of the Circuit Court, as a personal judgment, was not to be treated as final, but only as interlocutory, until the deficiency mentioned was determined, and the property held as security for its payment had been sold and applied.   At any rate, the complainant, relying upon the decree of the court as evidence of his demand against Withers, invoking for it full faith and credit under the clause of the Constitution, cannot object to the character which the highest court of Virginia has given to it, or insist that it is entitled to any other consideration or weight.   No greater effect can be given to any judgment of a court of one State in another State than is given to it in the State where rendered.   Any other rule would contravene the policy of the provisions of the Constitution and laws of the United States on that subject.*

If the decree was interlocutory, it is to be treated as only fixing provisionally the indebtedness to the complainant of the firm of Selden, Withers & Co., and, of course, the indi-

---

* Suydam *v.* Barber, 18 New York, 468.

vidual liability of Withers. The adjudication did not prevent a re-examination of the question of his liability, if an examination of the merits of his defence were ever made, or any subsequent modification of the terms of the interlocutory decree. The whole subject remained open, under the control of the court, and at the final hearing the provisions of the decree might have been enlarged or restricted, or otherwise modified.

- It does not appear from the bill, or the record annexed, whether any proceedings for the enforcement of the interlocutory decree were subsequently taken; whether the property in Virginia or in Missouri, or any part of such property, was ever sold; or, if a sale was made, whether any of the proceeds were applied to the extinguishment of the amount adjudged due. If any inference upon this head can be drawn from the allegation of the bill that the amount remains wholly unsatisfied, it is that no such proceedings were ever taken.

The jurisdiction of a court of equity to reach the property of a debtor justly applicable to the payment of his debts, even when there is no specific lien on the property, is undoubted. It is a very ancient jurisdiction, but for its exercise the debt must be clear and undisputed and there must exist some special circumstances requiring the interposition of the court to obtain possession of, and apply the property. Unless the suit relate to the estate of a deceased person, the debt must be established by some judicial proceeding, and it must generally be shown that legal means for its collection have been exhausted. In all cases, we believe property pledged or conveyed for the payment of the debt must be first applied.

The rule requiring the existence of special circumstances bringing the case under some recognized head of equity jurisdiction, should not only be insisted upon with rigor whenever the property sought to be reached constitutes, as here, assets of a deceased debtor, which have already been subjected to administration and distribution; but some satisfactory excuse should be given for the failure of the cred-

itor to present his claim, in the mode prescribed by law, to the representative of the estate, before distribution.*

In England, courts of chancery took jurisdiction of bills against executors and administrators, for discovery and account of assets, and to reach property applicable to the payment of the debts of deceased persons, not merely from their general authority over trustees and trusts, but from the imperfect and defective power of the ecclesiastical courts. It was sufficient that a debt existed against the estate of a decedent, and that there was property which should be applied to its payment, to justify the interposition of the court; but when a distribution of the fund had been made, another creditor could not ask for a return of the moneys from the distributees or for a proportional part, if he had received notice of the original proceeding, and had been guilty of laches or unreasonable neglect.†

In this country, there are special courts established in all the States, having jurisdiction over estates of deceased persons, called probate courts, orphans' courts, or surrogate courts, possessing, with respect to personal assets, nearly all the powers formerly exercised by the court of chancery and the ecclesiastical courts in England. They are authorized to collect the assets of the deceased, to allow claims, to direct their payment and the distribution of the property to legatees or other parties entitled, and generally to do everything essential to the final settlement of the affairs of the deceased, and the claims of creditors against his estate. There is a special court of this kind in this District, called the Orphans' Court, which was competent to allow the complainants' demand, but the demand was never presented to it for allowance. That court could have directed the application of the assets of the estate, if the demand had been allowed, or, if rejected, had been established by legal proceedings. No application was made for its aid, nor was the demand brought to the attention of the Supreme Court of the District when the

---

* Williams v. Gibbes, 17 Howard, 239, 254, 255; Pharis v. Leachman, 20 Alabama, 662.

† Sawyer v. Birchmore, 1 Keen, 391.

estate was before it for settlement, although publication was . made by the auditor for the presentation of claims. No explanation is made or attempted of this neglect, and the only grounds disclosed by the bill for relief are fully met by the answers, and are not sustained by any proof.

We are of opinion, for the reasons stated, that the decree of the court below, dismissing the bill, was correct; and it is unnecessary to consider the objections to it founded upon the non-joinder of the surviving partners of Withers, and the statute of limitations.

DECREE AFFIRMED.