## BELDING *v.* GAINES *et al.*[1]

*(Circuit Court, E. D. Arkansas.* March 1, 1887.)

COURTS—FEDERAL COURTS—CITIZENSHIP—COLLUSIVE JOINDER—PARTITION.
Complainant, a citizen of Texas, the heir of B., sued his co-heirs, citizens of Arkansas, claiming from the first defendant, who had obtained the legal title to the ancestor's property, a one-fourth interest, and from the other two defendants, partition. The last two defendants filed a cross-bill, claiming separate ownerships of one-fourth interest, and also partition. *Held* that, although the interests of the last two defendants and that of complainant were the same as against defendant who claimed the legal title, their interests were not so identical in other respects as to require their being joined as complainants; and a plea in abatement to the jurisdiction on the ground that they were collusively made defendants to give the federal court jurisdiction, should be overruled.

In Equity. On plea in abatement to the jurisdiction.
*U. M. & G. B. Rose,* for plaintiff.
*M. W. Benjamin,* for defendants.
Before BREWER and CALDWELL, JJ.

BREWER, J. The complainant is a citizen of Texas, the defendants all citizens of Arkansas; *prima facie,* therefore, this court has jurisdiction. But these facts appear, and upon them a plea in abatement to the jurisdiction has been filed. One Belding died, having the equitable title to a tract of land in Arkansas, and leaving four heirs. One of them, a defendant herein, obtained the legal title. The complainant is one of the heirs, and files this bill claiming as against such defendant a one-fourth interest in the property, and as against all the defendants—the other heirs being made defendants—partition. Such other heirs file a cross-bill, claiming their separate ownerships of one-fourth interest, and also asking partition. It is insisted that the interests of these two defendants are the same as those of the complainant, and that they are collusively joined as defendants for the purpose of giving this court jurisdiction; that the court should ignore the action of the pleader, rearrange the *status* of the parties litigant, and place such last-named defendants on the side of the complainant; and, so placing them, there would be a suit between citizens of this state, of which this court could not take jurisdiction. I think this is a mistake. It may be true that the complainant and the two defendants are alike interested in divesting the other defendant of whatever right and protection he may claim from holding the legal title, but there their identity of interest ceases. Each seeks to recover for himself, and not for the three jointly, his one-fourth share of the property. Partition implies a setting apart to each owner his hitherto undivided interest, and each owner has a separate interest in establishing the fact and extent of his title, and in securing his separate share of the estate. Take an ordinary law action. There must be a unity of interest, not merely in the subject-matter of the action, but also in the relief sought,

[1] Publication delayed by failure to obtain copy of opinion at time of its delivery.

before two parties can be joined as plaintiffs. Take, for illustration, a case I have just decided in the Eastern district of Missouri (*Keary* v. *Life Ass'n*, 30 Fed. Rep. 359.) A man took out a policy in an insurance company. The policy provided for the payment of $10,000 upon his death, not to his heirs in bulk, but separately,—$2,000 to one, $1,000 to another, and so on, specifically naming each. Upon his death the heirs joined as plaintiffs in a single action. I sustained a demurrer on the ground of misjoinder of several causes of action. All were interested in the subject-matter of the action,—the establishing the policy as a valid contract upon which the company was liable,—but they were not jointly interested in the relief sought. Each had his separate cause of action for the money due him by the terms of the policy, and neither was interested in the money claimed by the others. So here the three may be interested in striking down any adverse claim which may be set up by the holding of the legal title, but neither of them is interested in the recovery by the other of his one-fourth. That is a matter which concerns and benefits each claimant separately. There might, in fact, be more antagonism between the several interests of the three than between the several plaintiffs in the law action referred to. It is true, as stated in *Barney* v. *Baltimore City*, 6 Wall. 280, all part owners are so interested in the partition that they should be made parties; but where full partition is sought each owner has his separate and individual interest to assert and protect, and that individuality of interest enables him to maintain an action in his separate name. The fact that one party denies all part ownership by the others, and that they therefore make common cause to establish their claim against such denial, does not take away their individuality of interest in the partition consequent upon their success in the first matter of controversy. So far as the case of *Bland* v. *Fleeman*, 29 Fed. Rep. 669, conflicts with the views above expressed, I do not think it should be followed. The plea in abatement will be overruled.

CALDWELL, J. I concur in the conclusion reached by the circuit judge. The plaintiff was compelled to make all the heirs parties, and, according to a well-settled rule of equity pleading, he had the right to make them defendants, without regard to the question of the attitude they occupied towards each other or the plaintiff. But it is said that the defendants in this state, whose interests harmonize with the plaintiff's, are "collusively joined as defendants." It does not follow that, because some of the parties to the suit have common interests with the plaintiff, they must be made plaintiffs, or so treated for any purpose. "In a suit by joint tenants or tenants in common for a partition, all must be before the court; but it is not necessary of course that all should be plaintiffs." Pom. Rem. §. 254. It was a rule of common-law pleading that all persons having the same interest should stand on the same side of the suit, but that rule never had any application in a court of chancery. All that the rules in chancery pleading require is that all parties materially interested in the subject of the suit be brought on the record either as

plaintiffs or defendants. Story, Eq. Pl. § 72; *Bank* v. *Seton,* 1 Pet. 306. Certainly parties cannot be said to be collusively joined for the purpose of perpetrating a fraud on the jurisdiction of the court, when they are indispensable parties to the suit, (*Barney* v. *Baltimore City,* 6 Wall. 280,) and when by the settled rule of chancery pleading the plaintiff had an undoubted right to make them defendants, and when their *bona fide* citizenship, and that of the plaintiff, is such as to give the latter the right according to the very letter of the constitution and act of congress to sue them in the federal court. By no rule of law or logic can the contention be supported that the rules of chancery pleading as to parties shall be abrogated, and a rule the converse of that which has obtained from time immemorial adopted, in order to deprive a citizen of another state from his constitutional right to sue in this court. If the defendants' contention is sound, then a plaintiff suing in a federal court must join with him as plaintiffs all persons whose interests are supposed to be like his own, whenever such joinder would have the effect to defeat the federal jurisdiction, and for that very purpose. By a parity of reasoning, where the federal jurisdiction would exist by the plaintiff joining with him all persons having the same interest, he would be required to make them defendants, if by so doing the federal jurisdiction would be ousted. But a compulsory rearrangement of the parties to a suit, rightfully brought under the act of congress and the rules of chancery pleading, with a view to oust the federal jurisdiction, is without precedent, and opposed to the doctrine and spirit of the rules on the subject of federal jurisdiction when that jurisdiction is dependent on citizenship. By equity rules 22 and 47 necessary and proper parties may be dispensed with when the effect of making them parties would be to oust the jurisdiction of the court. So far from treating as plaintiffs those who are properly made defendants under the rules of chancery pleading, for the purpose of ousting the jurisdiction, they will, when not sued, not be permitted to make themselves plaintiffs, if the effect would be to oust the jurisdiction; but the court will on its own motion make them defendants in order that the jurisdiction may be maintained. On this point Mr. Justice BLATCHFORD says:

"In regard to the petition presented by Wheeler, asking to be made a co-plaintiff in the bill, I think the point is disposed of by the rules in equity prescribed by the supreme court. A case like this one was probably foreseen, and is provided for in the forty-seventh and forty-eighth of the rules of practice for courts of equity. * * * These rules have been acted upon ever since they were adopted in reference to cases of this kind, particularly in regard to corporations where the stockholders are numerous, and reside in various places. But, independently of all that, it is apparent that, in this case, to make Wheeler, who is a citizen of the state of New York, a party plaintiff, would oust the jurisdiction of the court; and under those circumstances, irrespective of the rules referred to, the rule of equity would be to make the person a party defendant, and not a party plaintiff. It is not at all necessary, in order to give to Wheeler, as a stockholder in the Pacific Mail Company, the benefit of this suit, that he should be made a co-plaintiff. He may come in and contribute to the expenses of the suit, and avail himself of the benefits of it by being made a defendant." *Brown* v. *Steam-Ship Co.,* 5 Blatchf. 535.

The case of *Barney* v. *Baltimore City, supra,* goes to support the jurisdiction in this case. In that case Mary Barney, a citizen of Delaware, and one of the heirs of Samuel Chase, filed her bill in the circuit court of the United States for Maryland against the city of Baltimore and several individuals, co-heirs with her, certain of them being citizens of Maryland, and certain others, (William, Ann, and Matilda Ridgely,) citizens of the District of Columbia, for partition and an account of rents and profits of real estate of which it was alleged Chase died intestate. It is obvious from the statement and the opinion in the case, that the interests of the plaintiff and the other heirs who were made defendants were identical, and that the city of Baltimore occupied in that case the attitude the Gaineses do in this, and that the city was the only defendant claiming adversely to the plaintiff. The court held all the heirs of Chase were indispensable parties to the suit, and that as three of them were citizens of the District of Columbia and could neither sue nor be sued in a federal court, the case must be dismissed. But neither the counsel nor the court intimate that the common citizenship of some of the heirs, made defendants, with the city of Baltimore, would deprive the court of jurisdiction. On the contrary, Mr. Justice MILLER, who delivered the opinion of the court, said: "The first question which the record before us presents is, whether the circuit court of the district of Maryland, sitting as a court of chancery, could entertain jurisdiction of the case. The difficulty arises in reference to the interest of William, Ann, and Matilda Ridgely," who were the heirs residing in the District of Columbia. The counsel for Gaines invokes and attempts to apply to this case the doctrine applicable to the removal of suits which is thus stated by the supreme court:

"For the purposes of a removal the matter in dispute may be ascertained and the parties to the suit arranged on opposite sides of that dispute. If in such arrangement it appears that those on one side are all citizens of different states from those on the other, the suit may be removed." *Removal Cases,* 100 U. S. 457.

This doctrine is applied alone in cases brought originally in a state court, and then in aid of the federal jurisdiction, or, as expressed by the supreme court, "for the purposes of a removal." It is to prevent plaintiffs from depriving defendants of the right of removal by uniting with them as defendants persons whose citizenship would prevent a removal, and who either have no real interest in the suit, or whose interests are on the side of the plaintiff. *Arapahoe Co.* v. *Railway Co.,* 4 Dill. 277; *Sewing-Machine Co. Case,* 18 Wall. 586. The doctrine has no application in the case at bar. The cross-bills filed by the Beldings are proper. *Peay* v. *Schenck,* 1 Woolw. 175.