## HALE v. COFFIN.

(Circuit Court, D. Maine. March 5, 1902.)

### No. 524.

1. CORPORATIONS—STATUTORY LIABILITY OF STOCKHOLDERS—RIGHT OF ACTION TO ENFORCE UNDER LAWS OF MINNESOTA.

Under the statutes of Minnesota relating to creditors' suits for enforcing the liability of stockholders, which provide that when there is found to remain corporate property the court shall appoint one or more receivers, but that otherwise it may proceed without a receiver, the right to proceed against stockholders is vested in the creditors, and not in any officer to be appointed by the court; and the appointment of a receiver in such a suit, after all the property of the corporation has been administered in a previous suit, confers upon such receiver no legal right of action in his own name against a stockholder in a state where the common-law rule prevails which requires the plaintiff to have the title. But under the decision of the circuit court of appeals for the First circuit in Hale v. Hardon, 37 C. C. A. 240, 95 Fed. 747, that such a receiver is vested with sufficient

title to maintain an action at law in Massachusetts, a circuit court in such circuit is not justified in dismissing a suit in equity brought by him, on the ground alone of his incapacity to sue.

2. WILLS—LIABILITY OF LEGATEE FOR DEBTS OF TESTATOR—ENFORCEMENT.
Assets distributed to legatees may, under special circumstances, remain impressed with a trust in favor of unpaid creditors of the estate, and may be subjected to administration by a suit in equity.

8. JURISDICTION OF FEDERAL COURTS—SUIT TO CHARGE LEGATEE.
Where the administration of an estate has been completed by the probate court of a state, and the property has been distributed, and has passed out of its control and beyond its jurisdiction, a federal court has jurisdiction of a proceeding in equity to subject such property in the hands of a distributee to a debt of the decedent.

4. LIMITATION—SUIT IN EQUITY.
Where such a suit in equity is based on a legal demand, the court is bound by the statute of limitations which would govern a special statutory action at law thereon.

5. CORPORATIONS—NATURE OF STOCKHOLDER'S LIABILITY.
A proceeding to enforce the statutory liability of a stockholder, whether at law or in equity, is based on a common-law, and not an equitable, right.[1]

6. LIMITATION—ACTION TO CHARGE LEGATEE—MAINE STATUTE.
Rev. St. Me. c. 87, provides that, where a right of action on a demand against a decedent does not accrue within the period limited by statute for bringing suits against the executor or administrator, the claimant may file his demand in the probate office, in which case, unless a bond is given, sufficient assets to meet the claim shall be retained, but, if the claim is not so filed, "the claimant may have remedy against the heirs or devisees of the estate within one year after it becomes due." *Held*, that such provision gives no new right, but merely a specific remedy for the enforcement of a right existing independently of statute, and therefore the limitation of one year is not merely a condition inhering in the special remedy, but declares the policy of the state, and is applicable to all analogous proceedings, whether brought in a state or a federal court.

7. SAME—CONSTRUCTION OF STATUTE—"HEIRS AND DEVISEES."
The provision of Rev. St. Me. c. 87, § 16, giving a remedy against the "heirs and devisees" of a decedent on a demand against the estate accruing after the time limited for bringing an action against the executor or administrator, is not restricted in its application to those who are technically "heirs and devisees," but such words must be construed, in view of the context, and the law of the state making the personal estate primarily liable for debts in case of intestacy, and equally chargeable in case of testacy, to include next of kin or legatees.

8. SAME—SHOWING TO AVOID BAR.
A decree was entered by a court of Minnesota laying an assessment upon the stockholders of an insolvent corporation. A stockholder domiciled in Maine had previously died, and, at the time of the entry of such decree, her estate had been closed. Nearly three years after such decree the receiver brought a suit in equity in the circuit court for the district of Maine to charge a legatee of such stockholder for such assessment. *Held*, that under the statutes of Maine the right of action accrued at once on the making of the assessment, and was barred in one year thereafter. *Held*, also, that the suit, being based on a legal demand, was governed by such limitation, although in equity and in a federal court, in the absence of a sufficient showing in excuse to remove the bar; and that allegations that complainant was a resident of Minnesota, and

---

[1] Stockholder's liability to creditors of corporation, see note to Rickerson Roller-Mill Co. v. Farrell Foundry & Machine Co., 23 C. C. A. 315, and Scott v. Latimer, 33 C. C. A. 23.

had no knowledge of the death of the stockholder, were not sufficient, without specific facts showing diligence on the part of complainant.

In Equity. Suit to subject assets of the estate of a deceased stockholder of an insolvent Minnesota corporation, in the hands of a legatee, to an assessment made against such stockholder under the statute of Minnesota.

M. H. Boutelle and Eben Winthrop Freeman, for complainant.
Locke & Locke, for respondent.

PUTNAM, Circuit Judge. This is one of the group of cases growing out of the same receivership, and having its origin in the same circumstances as those shown in Hale v. Hardon (C. C.) 89 Fed. 283; Id., 37 C. C. A. 240, 95 Fed. 747; and in Hale v. Tyler (C. C.) 104 Fed. 757. The present case, however, is in equity, in order to reach the assets of the estate of a deceased stockholder which have been distributed to one of the legatees. Hale v. Hardon was at law, in the district of Massachusetts, and, of course, so far as parties were concerned, governed by sections 721 and 914 of the Revised Statutes. Therefore the result of that case can be accepted as in all respects authoritative within the district of Massachusetts only. The case at bar arose in the district of Maine, and therefore, for at least some purposes, may be governed by the peculiar laws of that state. Although in equity, it is based, as we will see, on a common-law right.

The complainant sues, in his capacity as so-called receiver,—constituted as such by one of the courts of the state of Minnesota,— on a certain proceeding brought by a judgment creditor of the Northwestern Guaranty Loan Company, a corporation organized under the laws of Minnesota, in behalf of himself and other creditors, solely for the purpose of enforcing against the stockholders thereof a peculiar liability imposed by the constitution of that state. The corporation became insolvent, and, in a proceeding in one of the courts of Minnesota prior to that in which the present complainant was appointed receiver, all its assets were sequestered and administered for the benefit of its creditors, so that in the proceeding in which the complainant was appointed receiver there were no remaining assets to be administered. The statutes of Minnesota provide that when, in a suit for enforcing the liability of a stockholder, there is found to remain corporate property, the court shall appoint one or more receivers, but that, if it appears that the corporation has no property, the court may proceed without appointing any receiver.

Therefore, under the constitution and laws of Minnesota, so far at least as this case is concerned, the mere right to proceed against stockholders originates and vests in the creditors, and not in any officer or other person appointed or to be appointed, or authorized or to be authorized by force of any statute or by any executive or judicial proceeding. Consequently no right of action against any stockholder of the corporation in question ever arose or vested in the complainant; and he has no title by virtue of any assignment,

sequestration, executive or judicial action, or in any other way, and he is in fact only a master in chancery, appointed by the court to assist it in effectuating its decrees. Under these circumstances, if this were a suit at common law, brought within the district of Maine, where the rule has always prevailed, by virtue of which no action can be brought except by some party having a title, no suit could be maintained by the complainant in his own name, although, under the statutes of this state, if he were an assignee, an action might lie, and although, also, according to the rules of the common law, an action would lie in his name if the right of proceeding against the stockholders originated in him, instead of in the creditors. Moreover, although the right of action arose in another state, the courts in Maine would be compelled to enforce them, not on the ground of comity, which word can be properly used and applied by courts of common law only in its conventional and limited sense (Dicey, Confl. Laws, 14, 15), but because the constitution of the United States requires it (Stewart v. Railroad Co., 168 U. S. 445, 18 Sup. Ct. 105, 42 L. Ed. 537; Whitman v. Bank, 176 U. S. 559, 20 Sup. Ct. 477, 44 L. Ed. 587; Bank v. Farnum, 176 U. S. 640, 20 Sup. Ct. 506, 44 L. Ed. 619). So if, on any account, a failure of remedy is at any time threatened, it is for the courts to await the action of the legislature. That the remedy involves a matter of absolute law, not reached by any international rules, is illustrated by following to its conclusion Hawkins v. Glenn, 131 U. S. 319, 9 Sup. Ct. 739, 33 L. Ed. 184. That suit was brought by an assignee in a jurisdiction where an assignee may bring any action in his own name, but as soon as the same assignee attempted to proceed in a jurisdiction where the common law prevailed the supreme court refused him relief. Glenn v. Marbury, 145 U. S. 499, 508, 12 Sup. Ct. 914, 36 L. Ed. 790.

Childs v. Cleaves, 95 Me. 498, 50 Atl. 714, is understood to assert in this district a different rule with reference to parties plaintiff; but, if so, it would be so clearly contrary to the law of Maine as it has existed from the origin of the state, adduced from the common law of England through the common law of Massachusetts, that it could not receive the assent of this court, and could not bind it. If it were of the character claimed for it in this particular, we would be obliged to stand to the uniformity of the law, regarding Childs v. Cleaves as concerning some oversight which the court at some future time would remedy. That such is the rule which governs us, even with reference to the construction of statutes, was made especially clear by Burgess v. Seligman, 107 U. S. 20, 2 Sup. Ct. 10, 27 L. Ed. 359. But Childs v. Cleaves does not necessarily go to the extent claimed for it. It is apparent that the court proceeded with reference to a receiver who was supposed to be of a different class from the one at bar. It is to be borne in mind that, while we take judicial notice of the statutes of Minnesota, they are made known to the courts of Maine only as pleaded or proven. Childs v. Cleaves went to the court in bench on a demurrer, and in what way the court was advised or ascertained with regard to the laws of Minnesota, and how fully it was advised, the case does not clearly show.

The judicial proceedings in Minnesota resulting in Childs v. Cleaves were of an apparently different character from those out of which grew the case at bar. With reference to the latter, the assets of the corporation had been sequestered and administered in a prior proceeding in Minnesota, and the present suit arose out of a subsequent proceeding, in which no remedy was sought except the enforcement of the stockholders' liability. It appears, however, from the opinion in Childs v. Cleaves, at page 502, 95 Me., and page 714, 50 Atl., that the receiver, who was the then plaintiff, was appointed in the same case in which the assets of the corporation were administered. In that proceeding, as there were assets, the statute required the appointment of a receiver, as we have already shown. The statutory provision applicable thereto was peremptory: "and shall appoint one or more receivers." Childs v. Cleaves, 95 Me. 505, 50 Atl. 715. It is stated at page 502, 95 Me., and page 714, 50 Atl., that the administration of the estate by the receiver first appointed was completed in July, 1897, but that meanwhile, and pending that administration, an order was issued by the court in the same case, on the intervention of creditors, for the enforcement of the stockholders' liability, and that thereupon, in the same month of July, a decree was entered against the stockholders in favor of the interveners, and Childs was appointed receiver for enforcing against stockholders the judgment rendered for the net balance of indebtedness. Whether he was appointed such by virtue of the powers vesting on the ordinary rules of equity, or as the successor of the receiver expressly required by statute, is not clear.

In any event, the court appears to have assumed that the right to sue stockholders originated, or at least vested, in Childs, as receiver, and not in the creditors. Indeed, this follows, apparently, from the reliance it placed on Relfe v. Rundle, 103 U. S. 222, 26 L. Ed. 337,— a case of very narrow application. It involved the rights of the superintendent of insurance for Missouri, who was as said at page 225, 103 U. S., 26 L. Ed. 337, "the statutory successor of the corporation for the purpose of winding up its affairs." The opinion was careful to observe that his authority did not come from the decree of the court, but from the statute, and it added, "He was in fact the corporation itself, for all the purposes of winding up its affairs." Indeed, so far as the law is concerned, he stood the same as a corporation created by the legislature, as the successor of one or more old corporations, receiving the assets and charged with the liabilities, as in the case of Maine Cent. R. Co. v. Maine, 96 U. S. 499, 24 L. Ed. 836. Under such circumstances, no foreign tribunal has ever questioned the proper joinder of the new corporation as a party, either plaintiff or defendant, with reference to the transactions of its statutory predecessor. Thus the reliance placed on Relfe v. Rundle in Childs v. Cleaves leads to the belief that the court did not intend to subvert the common law with reference to parties and rights as always known in Maine, and that therefore that decision has no necessary application to the case at bar.

Childs v. Cleaves emphasizes, at pages 508 and 509, 95 Me., and page 717, 50 Atl., Bank v. Farnum, 176 U. S. 640, 20 Sup. Ct. 506,

44 L. Ed. 619, and Whitman v. Bank, 176 U. S. 559, 20 Sup. Ct. 477, 44 L. Ed. 587; but those cases touch no question involved here, as there was nothing in them regarding parties or title. They only went to the effect that, where a right of this general nature is given by the statutes of one state, it is effective in another state, not as a matter of comity, but of absolute, constitutional obligation. Indeed, the expressions of the court in Childs v. Cleaves, at page 512, 95 Me., and page 718, 50 Atl., and elsewhere, apparently show quite clearly that it regarded the then plaintiff as fully within the distinction made by us in Avery v. Trust Co. (C. C.) 72 Fed. 700, applied by Judge Coxe in Howarth v. Ellwanger (C. C.) 86 Fed. 54. On the whole, we are led to the conclusion that Childs v. Cleaves, as the court understood it, lies outside of a case where no title originated, or at least vested by statutory succession, in the nominal plaintiff.

Therefore, as this bill is not founded on a merely equitable right, but was filed to enforce one arising at common law, and therefore concerns only the remedy, we would be compelled to give force to these views, and dismiss the suit, if the subject-matter out of which it arose had had its origin within this district. The fact is, however, that the cause of action arose in another state; and it was, of course, necessary to the conclusions of the circuit court of appeals in Hale v. Hardon, 37 C. C. A. 240, 95 Fed. 747, by which we are bound, that under the laws of that state there was something which vested in the plaintiff as receiver, sufficient to enable him to become an actor in a suit at common law in the district of Massachusetts. While this would not meet the conditions in Maine in the event this were a common-law action, it is sufficient to control us in a proceeding in equity, although pending in this district, inasmuch as in equity we have no concern with the local practice as to parties. Therefore, it having been determined by the circuit court of appeals that the laws of Minnesota give the complainant something which is sufficient to make him an actor in a judicial tribunal, and as the rules of equity as administered in the federal courts are broad enough to protect a proceeding in the name of such a complainant, we cannot dismiss this bill on the mere question of parties, and we are compelled to look at the facts of the case.

It has been stated in regard to this receiver that the decree establishing the amount of the corporation's deficiency, and adjudicating that it was necessary to assess the stockholders the entire par of their stock to make good such deficiency, and appointing the complainant a receiver to enforce the same, was entered in February, 1897. This was erroneous, because the proceeding of that date was merely a finding of facts, and a statement of conclusions of law, with an entry of an order for judgment. The judgment itself bears date of November 3, 1897.

It is necessary to assume, and we understand, that the result reached by the circuit court of appeals in Hale v. Hardon accepted this judgment as conclusive on all stockholders, domestic and foreign, so far as the amount assessed is concerned, so that the relations of the parties to this bill date from the day of the judgment; that is, November 3, 1897. This cannot, for present purposes, be questioned, because oth-

erwise, in view of the fact that the corporation never was dissolved, and is not made a party (Cattle Co. v. Frank, 148 U. S. 603, 13 Sup. Ct. 691, 37 L. Ed. 577), the absence of any qualification by the supreme court would compel a dismissal. Consequently the well-known rule applies that the right of proceeding against the respondent accrued on November 3, 1897, and that all computations under any statute of limitations or otherwise must be made from that date. McDonald v. Thompson, 184 U. S. 71, 22 Sup. Ct. 297, 46 L. Ed. ——.

The stockholder out of whose holdings this bill arose was the owner of 22 shares of the stock of the corporation in question, of the par of $2,200. She deceased on March 14, 1895, at Portland, in the county of Cumberland and state of Maine, where she was resident at that time, leaving a will which was duly probated in that county. Hon. Joseph A. Locke duly qualified as executor thereof on April 16, 1895, and promptly gave proper notice of his appointment. He finally settled the estate in August, 1897, and was discharged as executor before the present bill was filed. At the time of the filing of the bill no legal representative of the estate existed, and there were no assets aside from those in the hands of the legatees.

It is not necessary to detail the laws of Maine with reference to the period of limitation for proceedings against the estates of deceased persons, or the steps necessary to be taken within that period by those holding claims which have not matured, in order that rights may be preserved against the executor or administrator. It is plain that in this case no rights continue against any official representative of the estate, and that none were preserved; this coming, presumably, from the fact that there was no person in existence until the judgment in Minnesota of November 3, 1897, which was after the estate was closed and the executor discharged, who would take any proceedings in that direction. Consequently there is no remedy at law against the estate in the local tribunals, and therefore there can be none in the federal courts,—a proposition which it is not necessary to elaborate. Morgan v. Hamlet, 113 U. S. 449, 5 Sup. Ct. 583, 28 L. Ed. 1043. This does not, however, bar a remedy in equity according to the fundamental principles applicable to chancery courts.

The estate was distributed to two legatees,—the respondent, who received $4,174.90, and Thomas Fairbrother, a resident of Vermont, and therefore not made a party. The distribution was made in July, 1897. The amount received by Fairbrother is not disclosed. Whether the inability to make Fairbrother a party would affect the jurisdiction, or whether the entire claim of the complainant could be liquidated from the amount received by the respondent, or only proportionately, we will not have occasion to consider.

This bill was not filed until June 27, 1900, which was about two years and ten months after the distribution to the legatees. It alleges that at the time of the decease of Mary A. Ripley, and ever since, the complainant was a nonresident of Maine, and had neither knowledge nor notice of her death, or of the pendency of administrative proceedings until after their close, nor until shortly before this suit was commenced. No demand was made on the respondent for payment within one year after the complainant was appointed receiver; that is to say,

within one year after November 3, 1897, when the claim in suit ripened, as we have seen. In pursuance of these allegations, it is agreed that the general solicitor of the complainant, which solicitor resided in Minnesota, on July 12, 1899, first sent to a solicitor within this state, whom the complainant had already employed, the claim now in suit, with other claims against other stockholders, in a letter which was received by the Maine solicitor on July 15th; that on July 22d the Maine solicitor wrote the general solicitor, informing him of the death of Mary A. Ripley, and that her estate had been settled; and that this was the "first information, knowledge, or notice" which the complainant or his general solicitor received of either of these facts. How long the solicitor in Maine had been employed does not appear, nor the extent and nature of his employment, nor in what part of the state he resided.

Under these circumstances, there can be no question that, aside from whatever provisions exist in the statutes of Maine, and aside from the questions of jurisdiction and apportionment to which we have referred, the complainant had a remedy in equity in this court against legatees when his bill was filed. This is such a well-settled principle that it needs no citation of authorities to support it. It is, however, put in a very positive manner in Borer v. Chapman, 119 U. S. 587, 599, 600, 603, 7 Sup. Ct. 342, 30 L. Ed. 532, where even assets distributed to legatees under an ancillary executorship are declared to be impressed ordinarily with a trust in behalf of creditors, even within the country of domicile, under circumstances where a creditor has had no method or opportunity of pursuing his claim through the ordinary channels. Mr. Justice Nelson, in Williams v. Gibbes, 17 How. 239, 254, 15 L. Ed. 135, pointed out that this was inherent in the broad rule applicable to every case where there is a common fund, in the distribution of which several parties are interested.

Neither is there any difficulty, so far as the present bill is concerned, arising from the fact that the administration of the estate was through the probate courts of Maine. It can hardly be said that it is not within the power of congress to devolve on the federal courts some jurisdiction even with reference to the probate of wills, because it would not now be maintained that any expression in section 2 of article 3 of the constitution, defining the judicial power of the United States, is to be construed in that narrow way. Ellis v. Davis, 109 U. S. 485, 497, 3 Sup. Ct. 327, 27 L. Ed. 1006; La Abra Silver Min. Co. v. U. S., 175 U. S. 423, 455, 20 Sup. Ct. 168, 44 L. Ed. 223; King v. Asylum, 12 C. C. A. 145, 64 Fed. 331, 335, et seq. Nevertheless, either because the matter of probate of wills belongs to the administrative side of the jurisdiction of special tribunals akin to the doctrine of parens patriæ (Fontain v. Ravenel, 17 How. 369, 384, 15 L. Ed. 80; King v. Asylum, 12 C. C. A. 145, 64 Fed. 331, 349), or because congress has not seen fit to confer on the circuit courts any powers in reference thereto, it has been held, ever since the case of Kosciusko's will, that the circuit court has no jurisdiction to grant or refuse probates. It has been also held, ever since Tarver v. Tarver, 9 Pet. 174, 9 L. Ed. 91, that the circuit courts

have ordinarily no power to declare probate proceedings void. This has not been based on any rule peculiar to the federal courts, but on the general proposition that courts of equity, whether in England or in this country, have ordinarily no jurisdiction of that character. In re Broderick's Will, 21 Wall. 503, 22 L. Ed. 599. Consequently there are some exceptions to the rule. In re Broderick's Will, 21 Wall. 517, 22 L. Ed. 599 et seq.; Ellis v. Davis, 109 U. S. 485, 496, 503, 3 Sup. Ct. 327, 27 L. Ed. 1006.

It is also well settled that the circuit court cannot interfere with the ordinary course of the administration of an estate of a deceased person, over which administration the local courts have already assumed jurisdiction. This might be put on the ground that the machinery for exercising a jurisdiction of that character has never been given any of the federal courts; but it is usually rested on the general rule which bars those courts from interfering with the res of which the state courts have taken control, and vice versa, within Shields v. Coleman, 157 U. S. 168, 15 Sup. Ct. 570, 39 L. Ed. 660, and Farmers' Loan & Trust Co. v. Lake St. El. R. Co., 177 U. S. 51, 20 Sup. Ct. 564, 44 L. Ed. 667, and other well-known cases of that character. Byers v. McAuley, 149 U. S. 608, 13 Sup. Ct. 906, 37 L. Ed. 867. It is also clear that, wherever the probate court has done any act in the ordinary course of the administration of an estate, or with reference to any matter within its jurisdiction, the federal courts are barred on the usual rule of res adjudicata. Simmons v. Saul, 138 U. S. 439, 458, 11 Sup. Ct. 369, 34 L. Ed. 1054; Sherman v. Association (decided by the circuit court of appeals for this circuit January 24, 1902) 113 Fed. 609. Where, however, the administration has been completed, so far as any particular branch of it is concerned, and the property has passed out of the control of the probate court, and beyond its jurisdiction, the federal courts are free to avail themselves of all the ordinary proceedings in law and in equity with reference thereto, as was fully demonstrated in the case which we have just cited (Borer v. Chapman, 119 U. S. 587, 7 Sup. Ct. 342, 30 L. Ed. 532). There it was said (at page 601, 119 U. S., and page 349, 7 Sup. Ct., 30 L. Ed. 532) that the powers which this court is asked to exercise in the case at bar are "a part of the ancient and original jurisdiction of the courts of equity," which is vested "by the constitution of the United States, and the laws of congress in pursuance thereof, in the federal courts," and which is "independent of that conferred by the states upon their own courts, and cannot be affected by any legislation except that of the United States." The rule is stated broadly in Byers v. McAuley, 149 U. S. 608, 620, 13 Sup. Ct. 906, 37 L. Ed. 867. Therefore there is no difficulty in taking jurisdiction of the case at bar, unless on account of some peculiarity which we have yet to consider.

The complainant has a serious difficulty to meet in the defense of limitation. We have already said that the basis of this bill is not an equitable right, but merely the seeking of a remedy in equity to enforce a right at common law. In construing rule 90 of rules of practice in equity, the supreme court has referred us to the prac-

tice as it existed in England when that rule was adopted. Thomson v. Wooster, 114 U. S. 104, 112, note, 5 Sup. Ct. 788, 29 L. Ed. 105. Volume 2 of the edition of Daniell's Chancery Practice there referred to was published in 1840. Its notes were written by the author, and are therefore of the same force as the text. There it is said that courts of equity have held themselves bound by the statute of limitations of James I. in respect of all legal titles and demands. This rule is expressly so restated in Metropolitan Nat. Bank v. St. Louis Dispatch Co., 149 U. S. 436, 448, 13 Sup. Ct. 944, 37 L. Ed. 799, as follows: "Courts of equity, in cases of concurrent jurisdiction, consider themselves bound by the statutes of limitation which govern actions at law." This is restated as late as Willard v. Wood, 164 U. S. 502, 520, 17 Sup. Ct. 176, 41 L. Ed. 531, and Baker v. Cummings, 169 U. S. 189, 206, 18 Sup. Ct. 367, 42 L. Ed. 711.

At the time the judgment of November 3, 1897, was entered, the complainant had a perfect remedy under chapter 87 of the Revised Statutes of Maine (section 16). A previous section provides that, when an action on a covenant or contract does not accrue within the period limited by statute for bringing suits against the executor or administrator, the claimant may file his demand in the probate office, and thus, unless a bond is given, secure the retention of a part of the estate to meet his claim when it comes due, with some other incidental provisions to which we need not refer. Section 16 reads as follows:

"When such claim has not been filed in the probate office within said two years, the claimant may have remedy against the heirs or devisees of the estate within one year after it becomes due, and not against the executor or administrator."

The liability in this case is contractual, as has been stated by the supreme court several times, but the right of action did not accrue till the period provided by statute for suing the executor had expired. Therefore the subject-matter of this proceeding falls within all branches of the provisions of the Maine statute referred to. Under the circumstances, there was plainly, for the full period of a year after the judgment of November 3, 1897, a complete statutory remedy, and also, as we have shown, a concurrent remedy in equity in this court. Borer v. Chapman, 119 U. S. 587, 600, 7 Sup. Ct. 342, 30 L. Ed. 532, is directly to the point that the statute cited could not contravene the broader right of the creditor to proceed in equity in the federal courts.

It may be observed that proceedings under this legislation, which originated in provincial times, have in Maine always been by common-law actions; yet the frame of the statute is broad enough to permit a remedy in equity where circumstances require it. Therefore the statute may well be held to insure relief in equity or at law, as the case may be, but, whether under one procedure or the other, always subject to the limitation of one year. The federal courts certainly can afford the common-law relief under the statute, as well as the equitable relief originally vesting in them. In any view, we thus have concurrent remedies, both based on contract, arising from the acquirement by the

testatrix of her shares of stock, and from the ripening by the entry of the judgment of November 3, 1897, into a complete statutory and contractual obligation, ordinarily enforceable in the common-law courts, and always so when, as in the case at bar, it extends to the full par value of the shares. Kennedy v. Gibson, 8 Wall. 498, 505, 19 L. Ed. 476, and subsequent decisions to the same effect.

The general rule that under such circumstances chancery is bound by the statutes of limitations was precisely determined in McDonald v. Thompson, 184 U. S. 71, 22 Sup. Ct. 297, 46 L. Ed. ——, already referred to. That was a suit in equity brought by the receiver of an insolvent national bank to enforce the double liability of a stockholder therein. So far as the liability is concerned, it is precisely the same as that at bar; arising under the application of exactly the same principles of law. The court laid aside the question whether the complainant should not have sued at law, and, assuming that he rightly proceeded in equity, held him absolutely bound by the statute of limitations of the state forming the district where the suit was brought, applicable to common-law proceedings with reference to actions on contracts and statutory liabilities. The court, as we have said, applied the rule that the cause of action accrued when the assessment was made,—in this case, November 3, 1897,—and added that at that time the statute of limitations began to run. The court assumed unhesitatingly that although the proceeding was in equity, inasmuch as it was based on a common-law right, the statute of limitations was to be implicitly obeyed. The whole reasoning of the court assumed this to be an undoubted proposition, so that the discussion in the opinion related only to the question which particular provision of the statute reached the case. Therefore, as we have said, the circumstances make McDonald v. Thompson conclusive on the case at bar, so far as the general propositions as to the effect of statutes of limitations are concerned.

In reply, the complainant urges his nonresidence and the lack of notice which we have stated; but, as against statutes of limitations, mere nonresidence, unless "beyond the seas," or out of the United States, is ordinarily disregarded. Undoubtedly equity sometimes excuses the bar of statutes of limitations when the law would not, although, with reference to the administration of estates, such an excuse was refused, even in equity, in Morgan v. Hamlet, 113 U. S. 449, 5 Sup. Ct. 583, 28 L. Ed. 1043, already cited. However this may be, no case is shown us where such an excuse arises from mere nonresidence, though accompanied with lack of knowledge, with reference to a fact so easily ascertained as the decease of one whose will is publicly exposed in a probate court. For a complainant to avail himself of this rule of equity, he must set out all the facts, so that the court may clearly see that he has exercised due diligence. Hardt v. Heidweyer, 152 U. S. 547, 558, 559, 14 Sup. Ct. 671, 38 L. Ed. 548. Among other things, in the present case, the complainant should have negatived any presumption arising from the fact that he had under employment, though for a time not stated, a local solicitor, and have shown that he made prompt inquiries, and that by some strange coincidences he failed to learn of the death of the shareholder. The pre-

sumption that if he had made early inquiries he would have learned the facts in season to have proceeded against legatees within the year provided by statute is so strong as to require clear proof to overcome it. Indeed, we are bound by the practical rule applicable hereto laid down in Re Broderick's Will, 21 Wall. 503, 519, 22 L. Ed. 599, already referred to. There it was claimed that the bar of the statute with reference to the alleged forgery of the will in question was met because the complainant resided in a secluded part of the United States, and was ignorant, not only of the fraud, but even of Broderick's death. Although that was a case of fraud, as to which courts are most liberal with reference to allowing exceptions to any bar arising from the lapse of time, yet the excuse offered was not accepted. The opinion rendered in behalf of the court says that the delay was due only to ignorance of Broderick's death, and of the open and public facts of the case, and that the plea is that the complainants "lived in a remote and secluded region, far from means of information." It adds:

"Parties cannot thus, by their seclusion from the means of information, claim an exemption from the laws that control human affairs, and set up a right to open up all the transactions of the past. The world must move on, and those who claim an interest in persons or things must be charged with a knowledge of their status and conditions, and of the vicissitudes to which they are subject."

The court then adds that this is the foundation of all judicial proceedings in rem; but this was not particularly applicable to that case, as distinguished from the case at bar, and it could not limit the principles involved in the citations which we have made from the opinion, nor can it be accepted as intended to do so. As we have already said, independently of the case of In re Broderick's Will, and on the general principles which we have stated, everywhere applicable to questions of limitations and laches, the mere nonresidence in Minnesota, under the circumstances of this case, does not establish an exception to the general rule.

The complainant also says that the Maine statute which we have cited affords no sufficient analogy with reference to the matter of limitations, because it is restricted to remedies against "heirs and devisees," and that therefore its remedy is not concurrent with that based on the broad rules of equity. It is to be regretted that as this proposition involves the construction of a statute which has existed, in one form and another, for over a century, and has passed through several phases, it is merely insisted on in such manner that we must notice it, without our being afforded the aid of the history of the legislation, or of the decisions of the courts in Massachusetts and Maine in reference thereto. Originally the Massachusetts statute used, instead of the words "heirs and devisees," the words "those who inherit the estate of such person, or devisees thereof." It came into Maine in that form. Laws Me. 1821, c. 52, § 28. As there found, the context shows that it was not intended to be limited to those who, in a technical sense, are "heirs and devisees," because the proviso which forms a part of the same section concerns legacies and bequests. The form of expression found in the act of 1821 continued through the Revised Statutes of 1840, and the present condensed form of expression, "heirs

or devisees," first occurs in the Revised Statutes of 1871. The provisions of the statute covering this topic were codified anew in 1872. Chapter 85. This statute needs no particular observation. In Massachusetts the legislation has been amended so as to expressly include legatees and next of kin.

The construction which the complainant puts on this provision of law would result in throwing its entire burden on those who take the real estate, either by will or inheritance, leaving those who take personalty, whether by will or on distribution, exempt. At the common law, by virtue of which realty bore no burden of debts unless expressly charged, this conclusion would be absurd. It is none the less so under the systems so long established in Maine and Massachusetts, by virtue of which, with reference to intestate estates, liabilities are charged on the personal property before the realty can be reached, and where, even in case of testacy, the entire estate, both realty and personalty, if all covered by specific gifts, contributes proportionately. It is not to be forgotten that the popular confusion between "devisees" and "legatees" has crept into the law books, and that many authorities have recognized the fact that they are sometimes used in legal instruments interchangeably. Stroud, Jud. Dict., and Bouv. Law Dict., "Devise." Even in Baker v. Bean, 74 Me. 17, 20, the court, in discussing the liability under this very statute, uses the phrase "bequeathing his property" to the person who was claimed to be liable, although the word "bequeath" is as remote from the word "devisee" as is the word "legatee."

But the construction of the precise section of chapter 87 of the Revised Statutes of Maine under consideration is easily determined by the context. Sections 14 and 15, to which we have already referred, provide that, if the demand is seasonably filed in the probate office, sufficient assets must be retained by the executor or administrator to meet it, unless a bond is given to pay whatever may be found due. Section 15 provides that, "when a bond is given, assets shall not be reserved, but the estate is liable in the hands of the heirs or devisees, or those claiming under them, and an action may be brought on such bond." Then follows section 16. There can be no question that all these sections go pari passu, and are to be construed on parallel lines. It is clearly the intention that the "assets" in the hands of the executor or administrator shall always remain liable, wherever they may be found. Primarily these "assets" are personal property, although under certain proceedings, the personal property being exhausted, the real estate may, by leave of the probate court, be converted into "assets" for the payment of debts. It is unreasonable to ask the courts to hold that what is primarily liable in the hands of the executor or administrator for debts is, by a continuous line of statutory provisions, all relating to the same topic, and intended to work out the same subject-matter, absolutely relieved when it comes into the hands of the next of kin or legatees. It is impossible, on any just rule of construction, to give effect to this proposition of the complainant, and he does not support it by the citation of any judicial authority indicating that we should. Our own search has also disclosed none.

As we wish to dispose of the entire topic on broad principles, and by a thorough application of them, we call attention to one fact in this connection which has not been brought before the court by the complainant. Although, under the rule of Borer v. Chapman, 119 U. S. 587, 7 Sup. Ct. 342, 30 L. Ed. 532, which we have already explained, assets coming into this jurisdiction from an ancillary administration can be reached through the equity side of the circuit court, yet, under the decisions in Massachusetts, they apparently cannot be reached by virtue of the class of statutes which we have been discussing; and there is no reason to doubt that the Maine courts would implicity follow the decisions of its sister state, where this legislation had its origin. This is a more serious proposition with reference to the complainant's claim that the remedies are not parallel, and therefore not concurrent, than that on which he rested, and which we have discussed; but the whole topic will be disposed of when we come to state the law of Maine with reference to the question of public policy underlying the statutory limitation.

The complainant makes a further answer to the claim that he is barred by the one-year limitation to which we have referred by the proposition that this does not come from any general statute declaring a general policy, but is simply one of the conditions inherent in the special remedy given by the Maine legislation, and not inherent in the remedy in equity which this court can offer. The decisions cited by the complainant do not assist us on this proposition. They involve the question which was under consideration by the circuit court of appeals for the First circuit in Railroad v. Hurd, 47 C. C. A. 615, 108 Fed. 116, where not a new remedy was given, but a new right. This class of cases is illustrated by The Harrisburg, 119 U. S. 199, 214, 7 Sup. Ct. 140, 30 L. Ed. 358, cited by the complainant. It is more specifically illustrated by Theroux v. Railroad Co., 12 C. C. A. 52, 64 Fed. 84, 85, also cited by the complainant, and Railroad v. Hurd, to which we have referred. These cases lay down the rule that where a right is thus originated by a statute the period of limitation imposed as a condition in the statute follows the right wherever it is enforced, either in any domestic or foreign tribunal. It is well known that such is not the law where the limitation relates only to the remedy. With reference to the present claim against a legatee there was undoubtedly a right in equity which both the federal courts and those of Maine would recognize anterior to, and independent of, any legislation. The statute cited merely gives a specific remedy. As, therefore, it affords only a new remedy, and not a new right, it is not cognizable in foreign courts, and much less so the conditions which it contains. Therefore it falls within the principles of the ordinary statutes of limitations, and we are compelled to look deeper into the matter.

In doing this we are met by Hall v. Bumstead, 20 Pick. 2, 8, showing that the limitations in this class of statutes are based so deeply on grounds of public policy that even the disabilities which are allowed as exceptions in the ordinary statutes of limitations are

not allowed here. In Fowler v. True, 76 Me. 43, 46, we are told, by citation from Massachusetts decisions, that by the policy of the laws of Maine "the remedy of a creditor upon the heirs or devisees of a deceased person is extremely limited," and that "every demand which can be made and enforced against the estate of a deceased person is to be pursued against the administrator, where it can be done." It adds:

"This object is one of great importance, by securing as far as practicable an early and final settlement of estates, so that the residuum may be distributed among those entitled, free from incumbrances and charges which would lead to protracted litigation."

It is a well-known fact that the policy of the legislation of Maine and of Massachusetts is, as thus stated, to transfer the succession as soon as it can reasonably be ascertained to whom it shall come, under such circumstances that the recipient shall not be harassed in reference thereto, nor build on it hopes which may long afterwards prove to have been without foundation. The law in this respect in Massachusetts, and successively in Maine, has been very scrupulous. The limitation contained in the extract which we have made from the Revised Statutes of Maine was not merely an arbitrary condition imposed in granting a new statute right, but it was undoubtedly framed in pursuance of a general purpose, which should not be disregarded, either by the courts of that state, or by federal tribunals enforcing the law within the territorial limits of her jurisdiction. If a rule was in fact given in Chewett v. Moran (C. C.) 17 Fed. 820. as broadly as the complainant maintains, it was negatived by the supreme court, two years afterwards, in Morgan v. Hamlet, 113 U. S. 449, 5 Sup. Ct. 583, 28 L. Ed. 1043. Indeed, the carrying of Morgan v. Hamlet to its legitimate conclusion would seem to be decisive of the pending case in favor of the respondent, in any view of it. That the federal courts, even when proceeding in equity, will insist with rigor on a reasonable compliance with local policy as to the administration and distribution of estates, and will decline to interfere by giving relief beyond the statutory limitations, except under very special circumstances, is strictly insisted on in Board of Public Works v. Columbia College, 17 Wall. 521. 530, 21 L. Ed. 687.

We are therefore compelled to hold that the claim is barred, by analogy, by the one-year limitation contained in Rev. St. Me. c. 87, § 16.

Let there be a decree dismissing the bill, with costs for the respondent.