SHERMAN v. AMERICAN CONGREGATIONAL ASS'N et al.

(Circuit Court of Appeals, First Circuit. January 24, 1902.)

No. 382.

1. EXECUTORS—PRESUMPTION—PLEADING.

Where the bill, in a suit by an heir to recover a sum given as a legacy and alleged to have been wrongfully paid to defendant as legatee, fails to allege that the payment was not made at the time required by the will, or that an annuity on which such legacy was conditioned was not duly paid, there is a presumption that such payment was properly made.

2. WILLS—LEGACIES—PLEADING—CONSTRUCTION.

Where the bill, in a suit involving the construction of a will giving certain property to a beneficiary on condition that the beneficiary should agree to pay an annuity to testator's wife, contains no allegation showing that the annuity is the principal object of the bequest, it will not be held to be either superior or inferior to the other purpose of the legacy.

3. SAME—COURTS—JURISDICTION.

Where the bill, in a suit which involves the construction of a will which was probated in Massachusetts, contains an indirect allegation that all the proceedings referred to have been approved by a Massachusetts probate court, but does not allege that the probate court on its equity side construed the will, it does not show an adjudication which will defeat the jurisdiction of a federal court to construe the will, as a distinction is preserved in Massachusetts between the jurisdiction of the probate court, acting strictly as such, and having no power to construe wills, and its special equity jurisdiction, conferred by statute, to construe such instruments.

4. CHARITABLE CORPORATION—POWERS.

The fact that a religious association has by its charter certain enumerated powers does not bar it from complying with the terms of a legacy requiring it to pay an annuity, when such compliance is only incidental, and tends to the accomplishment of the substantial purposes of its incorporation.

5. WILLS—CONDITION SUBSEQUENT.

Where a will directs the payment of a certain sum to an association on the death of the testator, on condition that the association agrees to pay an annuity, the estate vests in the beneficiary on the death of the testator, when the condition imposed on the beneficiary is a condition subsequent.

6. SAME—CONSTRUCTION OF BEQUEST—CONDITIONS.

A condition in a bequest, requiring the legatee to pay an annuity to the wife of the testator during her life, is shown to be a condition subsequent.

Appeal from the Circuit Court of the United States for the District of Massachusetts.

For decision of the circuit court, see 98 Fed. 495.

Roger M. Sherman, for appellant.

Walter Bates Farr (M. F. Dickinson, on the brief), for appellee the American Congregational Ass'n.

Dudley P. Bailey (Ralph W. Foster, on the brief), for appellees Tenney and Cheever.

W. Frederick Kimball (Walter Bates Farr, on the brief), for appellee Burwell.

Before PUTNAM, Circuit Judge, and ALDRICH and LOWELL, District Judges.

113 F.—39

PUTNAM, Circuit Judge. This case will be found to concern no question except the construction of the will of Isaac P. Langworthy. It is presented on a demurrer to the bill, which was dismissed in the circuit court. Mr. Langworthy died on January 5, 1888, leaving a widow, Sarah W. Langworthy. She died on April 22, 1893, also leaving a will. The parties made defendants, besides the American Congregational Association, are the executor of the will of Mr. Langworthy and the executors of his widow's will. The complainant claims to hold title under Mrs. Langworthy.

A question is made whether all the parties in interest have been brought into the case; and it is also maintained that the bill should have been brought by the executors of Mrs. Langworthy's will. The first question, if a substantial one, could probably be met by reframing the bill, for which leave would, of course, be granted. Therefore, in view of the conclusion which we have reached, it does not require our attention. As to the second, inasmuch as the bill charges that the executors of the will of Mrs. Langworthy are in collusion with the executor of the will of her husband, so that the case may fall within the usual class entitling a party in interest to proceed without the joinder as a coplaintiff of the person in whom the nominal title vests, it may, perhaps, by amendment, be put in proper form in this respect also, if it is not already.

Mr. Langworthy's will, omitting the formal parts, was as follows:

"First. I direct my executors hereinafter named to pay all my just debts and funeral expenses.

"Second. I devise and bequeath to my dearly beloved wife, Sarah W. Langworthy, all of my real and personal estate, wherever the same may be situated, of whatever the same may consist, except as hereinafter provided.

"Third. I direct my executors to pay over to the American Congregational Association, as soon as may be convenient after my decease, the sum of ten thousand dollars (unless previous to my death I shall have deposited said sum with said association), upon condition that said association agrees to pay to my wife, in quarterly payments during her life, the sum of $400, and upon the death of my said wife to pay over semiannually the net income of said $10,000, and any increase thereof, to the library committee of said association; the same to be expended by said committee in the purchase of local histories, genealogies, commentaries of the Bible, and ecclesiastical histories for said library.

"Fourth. I hereby nominate, as executors of this my will, my said wife, Sarah W. Langworthy, and my friends Charles H. Trist and Edward L. Burwell, both of said Chelsea, and request that they, and each of them, may be excused from giving any sureties on their official bonds as such executors."

Although Mr. Langworthy died in January, 1888, and Mrs. Langworthy in April, 1893, the legacy to the American Congregational Association was not paid until April 1, 1898. The bill gives no explanation of the delay, and it charges no one with laches in that connection. It does not even allege when the association was advised of the fact of the legacy, or that it was ever so advised until payment was made to it. It is to be observed that the third clause of the will directed that payment be made as soon as might be convenient. The bill fails to show what was the condition of the estate, and whether, with reasonable efforts on the

part of the executor, it was convenient to make earlier payment. The ordinary presumption is that the executor properly performed his duty, and, in view of the absence of any allegation to the contrary, the presumption accordingly is conclusive on this record.

Neither does the bill state whether Mr. Langworthy's executor paid Mrs. Langworthy during her lifetime the annuity contemplated by the third paragraph of his will, but, as it was his duty to do so, the presumption is that the payments were made. Moreover, the failure of the bill to allege to the contrary requires us to so assume.

Neither does the bill contain any allegations from which we can ascertain whether the annuity to Mrs. Langworthy was the principal purpose of its third paragraph. As the matter stands, we must refrain from any construction based, in whole or in part, on any hypothesis subordinating either object to the other. Neither can we give a construction which would make the annual payment of $400 a mere charge on the legacy in the third paragraph. The purpose was to support the annuity by a valid agreement by the association for its payment, made either formally, informally, or by implication, so that it would be received by Mrs. Langworthy whether it exhausted the principal sum, or though the principal sum were lost.

The allegations of the bill fail to set out with proper details, or in the exact language known to the law, or in orderly sequence, the facts of the case. It is not easy to ascertain from the pleadings the grounds of the complaint, or what relief is intended to be asked. The bill shows enough to make it plain that it is claimed that the legacy to the American Congregational Association failed, because—First, it made no formal agreement to pay the annuity; and, second, because it had no power under its charter to give such an agreement. Making so much clear, it then alleges that the executor of Mr. Langworthy's will "assumed to sell the estate, real and personal," "in accordance with a pretended trust to apply the proceeds to pay" the legacy to the association. Inasmuch as the will establishes no trust, and gives the executor no authority to dispose of Mr. Langworthy's real estate in order to effectuate its purposes, and inasmuch as the bill fails to allege in a proper way that Mr. Langworthy left real estate, or left personal property, or how much he left of each, this portion of the bill is not intelligible, and must be disregarded.

It next alleges that the executor "sold property of great value, being personalty and land, which descended and passed under the will of Mr. Langworthy to Mrs. Langworthy, and other property, at a price far below its real value." Here, again, comes the same want of sufficient allegations. So far as realty is concerned, for aught the bill properly shows the title passed to Mrs. Langworthy, and remains in her devisees or heirs, whichever the case may be; and the complainant, together with those, if any, interested with him in the estate of Mrs. Langworthy, have a full remedy at law by writ of entry, thus barring any jurisdiction in equity.

The bill next alleges that the executor "wasted said estate," with-

out further explanation thereof, and without any details whatever; so that here, again, it is insufficient to call on any chancery court to exercise its jurisdiction. Again, it alleges that the executor "placed a cloud upon the title thereto"; meaning, probably, the real estate. If this expression were accompanied with sufficient details to enable a chancellor to perceive what was the nature of the cloud, and how it was placed on the estate, and, indeed, how an executor, without some colorable authority given him by the will, or without some alleged action of a probate court, could have accomplished this, it would, perhaps, have afforded a basis for jurisdiction in equity; but the bare statement here found fails to do so.

Consequently, all the allegations of the bill to which we have referred are useless for the purposes of this suit; and we are left to the remaining allegation, in connection with what we have already said, as to the claim that the American Congregational Association never agreed to the payment of the annuity, and had no power to make such an agreement. This allegation is as follows: "And paid over to said defendant the American Congregational Association the proceeds, to the amount of ten thousand dollars and upward." The effect is to limit the complainant's relief to the reclamation of this sum.

The bill contains an indirect allegation that all the proceedings referred to had been approved by the probate court for the county of Suffolk. If it had properly shown that the real estate of Mr. Langworthy had been sold by his executor under a license from the probate court, or that any personal property had been disposed of wrongfully, for an inadequate value, and if, also, it admitted that the proceedings of the executor in those respects had been approved by the probate court, it would follow that, as that court has normal jurisdiction over such proceedings, and over the executor's accounts growing out of the same, its action would have been res adjudicata. It would, therefore, be clear, whatever might be the jurisdiction of a federal court in the event there had been no action by the probate court, that such action having been taken, and the probate court having jurisdiction, its proceedings would have resulted in a full bar to the present bill, so far as such matters are concerned. The respondents, however, maintain that inasmuch as the bill alleges, although incidentally, that all the transactions to which it relates have been approved by the probate court, the questions of the construction of Mr. Langworthy's will, and of the validity of the payment of the legacy to the American Congregational Association, are likewise res adjudicata. It is, however, true that questions of the construction and effect of a will, or of any particular clause therein, stand, so far as the probate courts of Massachusetts are concerned, on an entirely peculiar basis. Under late statutes, on a special proceeding, the probate court, acting as an equity court, has jurisdiction to determine them; but the distinction between probate courts, proceeding as such, and the same courts when exercising the statutory jurisdiction in equity, is a broad one, and is carefully preserved. Bennett v. Kimball, 175 Mass. 199, 200, 55 N. E. 893; Green v. Gaskill, 175 Mass. 265, 56 N. E. 560. It

is the undoubted law of Massachusetts that any action of a probate court, in the exercise of its normal jurisdiction, with reference to the construction of Mr. Langworthy's will, would have been void. Cowdin v. Perry, 11 Pick. 503; Granger v. Bassett, 98 Mass. 462. In this particular, the normal jurisdiction of the probate courts of Massachusetts remains as it does everywhere in the absence of special legislation, and it leaves to the courts of common law and the chancellor all questions of the construction and effect of devises and legacies. Therefore, notwithstanding the statute referred to in Bennett v. Kimball and Green v. Gaskill, in the absence of any showing that the probate court, on its equity side, passed on the question which, as we have said, is the only one necessary for us to consider, there is no doubt about our jurisdiction. The same result, under legislation in Maryland similar to that in Massachusetts, is reached by a decision of the circuit court of appeals for the District of Columbia, cited as approved in Kenaday v. Sinnott, 179 U. S. 606, 615, 21 Sup. Ct. 233, 45 L. Ed. 339.

Act Mass. 1895, c. 134, which is the only statute enlarging the jurisdiction of the probate courts brought to our attention later than the act of 1891, which was under consideration in Bennett v. Kimball, need be referred to merely for the purpose of stating that it is aside from any of the topics which we have before us.

The question remains whether or not the allegations referred to, stating that certain proceedings have been approved by the probate court, can be accepted as intending the exercise by it of its statutory equitable jurisdiction. In the absence of any allegation otherwise, we are justified in assuming that the reference to it is merely as a court of probate, and the positions taken by the parties at the hearing sustain that assumption. Therefore we hold that we have jurisdiction on this appeal as to the validity and effect of Mr. Langworthy's will, and over no other question.

The issue as to the power of the American Congregational Association to comply with the terms of the legacy is one easily disposed of on various theories. The fact that the association has, by its charter, certain enumerated powers, does not bar it from the exercise of incidental functions which relate to the accomplishment of the substantial purposes of its incorporation (Association v. Moore, 183 U. S. 642, 22 Sup. Ct. 240, 46 L. Ed. ——); and all occasion for any securing of the annuity by the association had gone by before the legacy was paid to it, and before, so far as the case shows, the estate was in condition to pay it conveniently, so that this topic is only a moot one.

Coming to the only other proposition which we have to consider: With two or three peculiar exceptions, as to which the law has necessarily established rigid rules, relating almost entirely to the descent of real estate, wills receive reasonable and fair construction, for the purpose of ascertaining the real intent of testators. Courts make use of various incidental rules to assist them in thus construing wills; but none, with the rare exceptions to which we have referred, are permitted to obstruct the effectuating the substantial purpose of the instrument in question. Having in view the facts that, so far

as this case shows, the legacy was paid to the association as soon as the progress of the estate would conveniently permit of its being done; that the will gave directions that it should be paid accordingly; that, when it was so paid, Mrs. Langworthy had deceased; that the presumption is that her annuity had been received by her from the executor during her lifetime; and that, therefore, the provision with reference to any agreement as to an annuity had become of no further use,—it requires a strong stretch of any method of reasoning to lead the mind to conclude, fairly and reasonably, that under such circumstances, or under the circumstance of his wife having deceased before him, Mr. Langworthy intended to annul this legacy. There is no reasonable ground for sustaining such an hypothesis; and, looking at the will fairly and reasonably, it cannot be questioned that it was the desire of Mr. Langworthy, under the circumstance of his wife deceasing before him, or, likewise, of his wife deceasing after him but before the legacy was paid, that it should vest absolutely in the association.

To come more closely to the matter, the condition named, according to all the rules of construction, was not precedent, but subsequent. The law leans strongly against construing a legacy or devise so that it does not vest on the decease of the testator. This rule was fittingly expressed for this case by Mr. Justice Swayne, speaking in behalf of the court, in Cropley v. Cooper, 19 Wall. 167, 174, 22 L. Ed. 109, 113, where he said "that a bequest, in the form of a direction to pay at a future time, vests in interest immediately if the payment be postponed for the convenience of the estate, or to let in some other interest." By the express terms of the legacy, the postponement of payment in this case was purely "for the convenience of the estate." This rule favoring the vesting of estates is so well known that it is not necessary to accumulate authorities, and, applying it as it is usually applied, there can be no question that the legacy in issue vested at the death of Mr. Langworthy, although not payable until later. Vesting at that time, everything in it in the form of a condition must, from the necessity of things, be regarded as subsequent. We think we may safely say that this is the rule laid down by all the text writers of authority, and also it is so stated by Chief Justice Marshall in Finlay v. King, 3 Pet. 346, 376, 377, 7 L. Ed. 701, 712. The case at bar seems to be precisely covered by that paragraph of the syllabus which was prepared by the court itself, where it is stated that the court had found no case in which a general devise, importing a present interest, in a will making no other disposition of the property, on a condition which may be performed at any time, had been construed, from the mere circumstance that the estate was given on condition, to require that it must be performed before the estate could vest.

The condition being subsequent, and its performance having been rendered impossible by the death of Mrs. Langworthy, it became void, and the legacy became absolutely effective. This was directly ruled by Lord Romilly, in 1866, in Collett v. Collett, 35 Beav. 312. Although this decision was by the master of the rolls, yet it has never been questioned in England. In Dawson v. Oliver-Massey, 2 Ch.

Div. 753, while the application of Collett v. Collett was doubted, both the then master of the rolls and the court of appeal accepted it as law. It is accepted by Jarm. Wills (6th Am. Ed.) from the 5th Eng. Ed. *851, where, also, at page *853, is laid down the well-known rule that conditions subsequent are to be construed strictly; that is to say, they are not to be so construed as to unnecessarily defeat the devise or legacy. Indeed, if it were necessary, in order to sustain this legacy, and thus to give effect to the intent of the testator, no weight would be given to the conditional form of expression as to the agreement to be given by the association. This well-known rule is stated in 2 Williams, Ex'rs (7th Am. Ed.) 567, to the effect that a bequest on condition may be considered as merely imposing a trust. We have already shown that this annuity could not be regarded merely as a charge raised on the legacy in the way of a trust; but the case is met in that particular by Stanley v. Colt, 5 Wall. 119, 166, 18 L. Ed. 502, 510, to the effect that a proviso in a will "gives way to the intent of the parties, as gathered from an examination of the whole instrument, and has frequently been thus explained and applied as expressing simply a covenant or limitation in trust." In other words, in this case, if necessary, the words "on condition," and so forth, could properly be read, "subject to a covenant or agreement by the association to pay an annuity," and so on.

On the whole, we sum up that there are no allegations charging the association with any express or implied renunciation of the legacy in issue; that, as the legacy vested on Mr. Langworthy's decease, the condition, even if it were strictly such, was, from the necessity of things, a condition subsequent; that according to the authorities, and the reasonable construction to be given as to the intent of the testator, the condition, whether it be regarded as such or as a mere covenant or agreement, had been rendered futile by the decease of Mrs. Langworthy, and the legacy thereupon vested absolutely in the association; and that, therefore, the bill was properly dismissed by the circuit court.

The decree of the circuit court is affirmed, and the costs of appeal are awarded to the appellees.

LOWELL, District Judge, concurs in the result.