INGERSOLL v. CORAM et al.

(Circuit Court, D. Massachusetts. August 15, 1904.)

No. 1,757.

1. JURISDICTION OF FEDERAL COURTS—SUIT TO CHARGE FUND IN HANDS OF ADMINISTRATOR—PRELIMINARY INJUNCTION.

Under the rule, stated on a former hearing of the case (127 Fed. 418), that a federal court, or other court of general jurisdiction, in a suit to establish and enforce a lien on the interest of defendants in funds belonging to the estate of a decedent in the hands of an ancillary administrator, can only act in subordination to whatever proceedings the local court of probate may take in the exercise of its proper jurisdiction, the court will not enter an order enjoining the local probate court from directing that the funds within its control be remitted to the court of probate jurisdiction at the place of domicile. It will, however, in the exercise of its jurisdiction within the limits stated, on a proper showing, enjoin the respondents whose interest is sought to be reached from receiving, until further order, any portion of the estate under any order of distribution by either the local probate court or the court having probate jurisdiction at the place of domicile.

In Equity. On motion for preliminary injunction.

Hollis R. Bailey, Edgar N. Harwood, and John H. Hazelton, for complainant.

Lewis S. Dabney and Horace G. Allen, for Leyson, administrator.

Horace G. Allen, for Davis, trustee.

Frederick N. Wier, for Coram, Root, and Cummings, executors, and Palmer, trustee.

Thaddeus D. Kenneson, for H. A. Root.

PUTNAM, Circuit Judge. The matter now particularly before us is a motion for an interlocutory injunction. The general history of this case is sufficiently shown by the opinion disposing of the demurrers, passed down on December 30, 1903, and reported in 127 Fed. 418. Soon after the filing of the bill, a restraining order was entered, directed to all the respondents, including John H. Leyson, administrator of the estate of Andrew J. Davis within the state of Massachusetts. The restraining order is shown by the petition therefor and the docket entries in reference thereto. The petition was as follows:

"Comes now the complainant in the above-entitled cause, by her undersigned counsel, and upon her verified bill of complaint heretofore filed in this court and cause, and exhibits thereto attached, moves the court to grant and issue a temporary restraining order, addressed to said defendant, John H.

Leyson, as administrator of the estate in Massachusetts of Andrew J. Davis, deceased, restraining him, his agents, servants, and attorneys, until the further order of this court, from removing out of the commonwealth of Massachusetts, or distributing or delivering to said defendants, Joseph A. Coram, Henry A. Root, Charles H. Palmer, or Andrew J. Davis, Jr., trustees, or either of them, or their or either of their agents, attorneys, representatives, or assigns, or otherwise disposing of those certain four hundred fifteen and a half eleven hundredths (415½-1100), part and parcel of those certain funds and effects in the custody of said John H. Leyson as administrator of the estate in Massachusetts of Andrew J. Davis, deceased, situate in the commonwealth of Massachusetts, more particularly described as follows: Three hundred thirty seven thousand eight hundred and sixty-two dollars of current money of the United States of America, and 170 bonds issued by the Butte & Boston Consolidated Mining Company, a corporation organized under the laws of the state of New York, for one thousand dollars ($1,000) each, principal, numbered consecutively from 1,310 to 1,479, inclusive, dated May 3, 1897; upon which complainant, Eva A. Ingersoll, as administratrix of the estate of Robert G. Ingersoll, deceased, alleges in her bill of complaint a lien exists in force and effect in favor of the estate and legal representatives of said Robert G. Ingersoll, deceased."

The docket entries were made under date of June 13, 1903, as follows:

"Ordered: Restraining order issue as prayed for, subject to be dissolved on motion and hearing. It is further ordered that the restraining order be dissolved on the respondents, or any of them, filing or depositing security by bond or otherwise for not less than two hundred thousand dollars, running to or for the benefit of the complainant, securing her claim as alleged in the bill; the same to be with such sureties, or secured by deposit in such manner, as approved by either of the Circuit Judges, or by the District Judge for the District of Massachusetts, or by any District Judge assigned to that district for the present term of the Circuit Court.

"It is further ordered that any person named in the prayer for subpœna will be heard on the motion for interlocutory injunction, and on any motion to dissolve the restraining order."

Afterwards there was a hearing on demurrers interposed by the various respondents, the result of which was the opinion passed down on December 30, 1903, as already stated, and a preliminary order, as follows:

"It is ordered that, after the bill has been perfected as to parties, in the manner in which it should be perfected as set out in the opinion passed down this day, there will be an order for an interlocutory decree, holding that the demurrers are good and sufficient so far as they relate to all portions of the bill claiming a statutory lien, and to those portions making Sarah Maria Cummings, Elizabeth S. Ladd, and Mary Louise Dunbar, respondents; that so much of the bill as seeks to establish a statutory lien be dismissed; that Sarah Maria Cummings, Elizabeth S. Ladd, and Mary Louise Dunbar shall be dismissed as parties respondent; also adjudging that the said demurrers are insufficient in law as to all other portions of the bill and other parties made respondents therein, and that such other respondents may answer within such time as shall be fixed by the court."

Subsequently the death of Elizabeth S. Ladd was suggested, and by leave of court Charles H. Ladd, individually and as administrator of the goods and estate of Elizabeth S. Ladd, was made a defendant, and duly appeared. Thereupon, on January 14, 1904, an interlocutory decree was entered, as follows:

"In accordance with the opinion passed down December 30, 1903, it now appearing that the bill has been perfected as to parties, and that all the

parties respondent have appeared, as therein required, the demurrers are adjudged good and sufficient so far as they relate to all portions of the bill claiming a statutory lien, and to all those portions making Charles H. Ladd, Charles H. Ladd, administrator of the estate of Elizabeth S. Ladd, Mary Louise Dunbar, and Herbert B. Cummings, executor of the will of Sarah Maria Cummings, respondents, and the bill will be dismissed as against said Charles H. Ladd, Charles H. Ladd, administrator, Mary Louise Dunbar, and Herbert B. Cummings, executor.

"It is further adjudged and ordered that said demurrers are insufficient in law as to all other portions of the bill, and as to all other parties made respondent thereto, and that as to such portions and parties the bill is sufficient in law, and that such other parties may answer, but not plead, on or before the 4th day of April next; and all questions of costs are reserved."

On the same day that the restraining order was entered a motion for a temporary injunction was filed by the complainant, but to and including the time of entering the interlocutory decree in regard to the demurrers no action had been had in reference thereto. Thereupon, on an oral application by the respondents in reference to the restraining order, the court entered on the same January 14th the following:

"Ordered: The restraining order granted on June 19, 1903, will be dissolved unless the complainant, on or before the 26th instant, file a motion for an interlocutory injunction relating to the subject-matter of the restraining order.

"It is further ordered, however, to avoid any misunderstanding, that, notwithstanding anything in this order, the restraining order will not be dissolved until further direction of court to that effect."

Consequently, on January 25, 1904, the complainant filed the following motion for an interlocutory injunction:

"Comes now Eva A. Ingersoll, complainant in the above-entitled action, by her undersigned solicitors and counsel, and, upon her verified bill of complaint filed in said cause, and such further showing as may be made in support of this motion pursuant to the order of this court in the premises, moves the court to grant and issue an interlocutory injunction, order, and writ in accordance with the prayer of complainant's bill, enjoining and restraining the defendant John H. Leyson, as administrator of the estate of Andrew J. Davis, deceased, his agents, attorneys, representatives, and representatives, from removing out of the commonwealth of Massachusetts, or distributing or delivering to defendants Joseph A. Coram, Henry A. Root, or Charles H. Palmer, and Andrew J. Davis, Jr., trustees, or either of them, or their or either of their agents, attorneys, representatives, or assigns, or otherwise disposing of, those certain four hundred fifteen and a half eleven hundredths (415½-1100) parts and parcels of all those certain funds and effects in the custody of said John H. Leyson as administrator of the estate of Andrew J. Davis, deceased, situate in the commonwealth of Massachusetts, more particularly described as follows, to wit, the sum of three hundred thirty-seven thousand eight hundred and sixty-two dollars, lawful current money of the United States, and one hundred and seventy bonds issued by the Butte & Boston Consolidated Mining Company, a corporation organized under the laws of the state of New York, for the principal sum of one thousand dollars each, dated May 3, 1897, and numbered consecutively from 1,310 to 1,479, inclusive, and enjoining and restraining said defendants Joseph A. Coram, Henry A. Root, and said Charles H. Palmer, and Andrew J. Davis, Jr., co-trustees, and each of them, and their and each of their agents, attorneys, representatives, and assigns, from receiving, transferring, assigning, taking, carrying away, or in any manner disposing of or interfering with said four hundred fifteen and a half eleven hundredths of said funds and effects, upon which a lien exists in favor of the estate and legal representative of Robert G. Ingersoll, deceased, as set forth in complainant's bill of complaint, until the final determination of this action and the enforcement of the rights of complainant."

Subsequently the respondents filed an answer to this motion, and proofs were duly filed on either side, and counsel were fully heard by us in support of their propositions pro and con. Meanwhile, between the filing of the motion for the interlocutory injunction on January 25th and the hearing thereof by the court, answers to the merits were filed by the various respondents, and issue joined by general replications. These answers, however, have not, so far as concerns the motion now before us, changed the status of the case, except as to one question, which will be considered herein by us. The other new questions raised by the answer are of a character which are properly reserved for final hearing. Among the rest is the fact that no representative of the estate of John A. Davis is a party to the record, as to the effect of which we do not deem it necessary at present to either express or form any opinion.

The answer to the motion now before us, and also the propositions submitted to us by counsel for the respondents, cover the same grounds as those disposed of by us in the opinion passed down on December 30, 1903, with a single exception. As at that time we gave the case careful examination, and reached a satisfactory conclusion, we hold that we are not required to review the same topics which were then before us; so that we will discuss only the exceptional issue, which, as we have said, is novel.

It will be noticed that the interlocutory decree on the demurrers provides that certain of the respondents named in the bill shall be dismissed therefrom, and the present motion for an interlocutory injunction does not ask that it shall run against the respondents who are so to be dismissed. Consequently those respondents are to be considered, so far as this motion is concerned, as though they had never been made parties to the bill. On the other hand, the answers of the various other respondents do not challenge the bill upon any fundamental question of fact and, inasmuch as the bill has been taken against them on the demurrers, so that for the present the case stands against them on the merits, the complainant, according to well-settled rules of equity practice, is entitled to an interlocutory injunction, as prayed for, unless some substantial injury would arise therefrom, or unless, by reason of the novel proposition to which we have referred, an injunction should be entirely refused, or granted only in a modified form.

The bill has been largely considered by counsel as though it related to a merely equitable attachment; but, so far from being properly such, it is only in the nature of an equitable attachment, while its real purpose is to enforce by equity process a lien created by contracts which the common law fully recognizes, and would enforce so far as within its power to do so. Consequently the conditions are such that not only no serious detriment can come to the parties as a result of an interlocutory injunction properly framed, but a proper order in that direction will very likely result in protecting at least some of the respondents from personal liability of a serious nature, which otherwise, under some circumstances, would rest upon them. The court has no difficulty on this account; and the only proposition, therefore, to which we have been called to give any

careful consideration arises from certain proceedings in the probate court for the county of Suffolk, in the state of Massachusetts, which have been instituted since this bill was filed, and which are now first brought to our attention.

At page 421 of our former opinion (127 Fed.) we referred to the claim then made by the respondents that those portions of the estate of Mr. Andrew J. Davis over which we are asked to exercise jurisdiction are under administration by the local court of probate, and therefore in custodia legis to such an extent that we cannot intermeddle with them, or enter any decree in reference thereto. As to that we said:

"Notwithstanding the proceedings in the probate court, this court has the same jurisdiction which any court of superior jurisdiction of the state of Massachusetts would have. The state courts of general jurisdiction constantly and properly exercise certain limited powers with reference to interests in estates in the courts of probate, and this to the extent to which the present suit in equity requires."

We then referred to Hale v. Coffin (C. C.) 114 Fed. 567; Id., 120 Fed. 470, 57 C. C. A. 528; and to Sherman v. The American Congregational Association, 113 Fed. 609, 51 C. C. A. 329. We then added:

"So far as present considerations are concerned, the action of this court would be plainly subordinate to whatever proceedings the local probate court may take within its proper jurisdiction, and the complainant takes her chances in reference thereto. For example, we note that the administration in Massachusetts is strictly ancillary, and we note also that under some circumstances the ancillary administrator may be required by the court having jurisdiction of his accounts to remit any proceeds in his hands to the proper administrative court at the place of domicile of the deceased. Whether, if such an order should be entered, this court could grant to the complainant any effectual remedy, we leave, in connection with all other questions of that character, until the occasion for disposing of them arises, if it ever does. For the present, we are only called on to determine the conflicting rights of divers claimants to sundry shares in the estate of Mr. Davis, leaving the extent of those shares to be determined by another tribunal having jurisdiction thereof, and also leaving for future determination what would be the powers of this court when that tribunal takes action in reference thereto, if it does. In that respect we certainly proceed no further than do the state courts of general jurisdiction when they permit a garnishment by a creditor of the interest which an heir at law or legatee may have in the estate of a deceased person, nor, as we have already said, any further than the local courts of general jurisdiction are constantly yielding to the demands of litigating proponents."

The line of demarcation thus pointed out is a clear one, recognizable on fundamental principles; but also, on the authority of numerous decisions of the Supreme Court, we would have no jurisdiction to interfere with the action of the probate court for the county of Suffolk so far as restraining that court from remitting portions of the estate under its jurisdiction to the proper tribunal at the place of domicile for distribution by that tribunal. Possibly, if all the heirs and legatees interested in the estate were defendants in the present bill, and were retained therein as such parties, we might restrain them from applying to the probate court in Suffolk county for an order remitting the estate under its jurisdiction; but we doubt whether, even under those circumstances, we could proceed to that

extent. It is for the probate court for the county of Suffolk to determine whether it will order the estate to be directly distributed or to be remitted, and we cannot compel it to order distribution; so that the result of any attempt on our part to prevent it from remitting would justify the probate court in refusing all action, if it saw fit to take that course, thus indefinitely leaving the portions of the estate in this jurisdiction unavailable, and demonstrating the folly, as well as the illegality, of our interference. It is, however, sufficient for us to say that in the present case, as will appear, sundry heirs and legatees of Andrew J. Davis, over whom we have no jurisdiction, and whom, therefore, we cannot control, have applied to the probate court for the county of Suffolk to remit the estate under its jurisdiction to Montana, so that the supposed condition cannot exist; and, even if it did, the right of the local probate court to exercise its peculiar jurisdiction without interference by us cannot be questioned. This is too plain to need any further discussion. In view, however, of the facts which the case before us has developed, we doubt not that the probate court for the county of Suffolk will perceive that justice and the protection of the rights of all parties concerned render it more suitable to order distribution here than to remit to Montana. However this may be, we must, in theory of law, as we do in fact, rest content with the belief that no injustice will be done by that tribunal.

It appears, as already suggested, that on December 3, 1903, December 22, December 24, December 28, and January 9, 1904, various legatees and heirs of Andrew J. Davis, by sundry petitions, prayed the probate court for the county of Suffolk to order that there be remitted to the administrator at the place of domicile the whole or part of the property of the estate within the jurisdiction of said probate court, to be disposed of in the state of the domicile according to the laws thereof. That it is within the peculiar jurisdiction of the probate court for the county of Suffolk to make such orders, if to it seems proper, cannot be questioned. These petitions, so far as we are now advised, have not been finally acted on; but any order for an interlocutory injunction which we may enter must and will be carefully guarded in view thereof, and limited accordingly.

The respondents on this hearing have brought to our attention the fact that the decree of the probate court for the county of Suffolk taking jurisdiction over portions of the estate of Andrew J. Davis, and granting probate in reference thereto, does not conform to the proceedings in Montana which we explained in our previous opinion, and as the result of which, as we there held, the estate was administered in accordance with a compromise arrangement, and the will was substantially disallowed. Apparently the proceeding in the probate court for the county of Suffolk was an admission to probate of the will of Andrew J. Davis in the usual form, unmodified by the decrees in Montana fully explained in our opinion. It may be that, before the case is reached on final hearing, the decrees of the probate court for the county of Suffolk will be amended to conform to the proceedings in Montana. It may be that, as its decrees are purely ancillary and subordinate, they should be construed to conform to

the proceedings of the tribunal at the place of domicile. However either of these may be, this question should properly be reserved for final hearing, as we have already said.

For the reasons already given, we cannot unqualifiedly grant so much of the pending motion as asks that John H. Leyson, as administrator, be restrained from removing any portion of the estate beyond our jurisdiction. We will, however, restrain Leyson, as such administrator, from removing any such portion of the estate beyond our jurisdiction, except in pursuance of a proper decree to that effect from the proper court within the state of Massachusetts having jurisdiction in probate in reference thereto; and also restrain the persons to be retained as respondents in the bill, in accordance with the interlocutory decree entered on the demurrers, from receiving pending this suit from any administrator or other person, in the way of distribution or otherwise, any of the portions of the estate of Andrew J. Davis to which this bill relates, whether the same be distributed by order of any court in Massachusetts or Montana, or elsewhere, or however distributed. Also Mr. Leyson, as administrator of the goods and estate of Andrew J. Davis within the state of Massachusetts, will be enjoined from making any payment to any of the said respondents by virtue of any decree of any court having probate jurisdiction within the state of Massachusetts.

The order may also cover any other matters prayed for by the present motion which will not conflict with the jurisdiction of the proper court within the state of Massachusetts having jurisdiction in probate over the portion of the estate of Andrew J. Davis involved in this litigation, if there are any such matters. It will nevertheless provide for its dissolution on security being furnished as authorized by the restraining order of June 19, 1903. The order will also provide for a dissolution of such restraining order.

Some question is made as to the proper fractional amounts, which can be submitted to us, if the parties desire, in connection with settling the order.

Ordered that an order issue in accordance with the opinion passed down this day; complainant to file a draft order on or before August 22, 1904, and the respondents' corrections thereof to be filed on or before August 29, 1904.